L. W. THOMAS, Appellant, v. THE CHICAGO, MILWAUKEE & ST. PAUL RAILWAY.

**Railroads:** TRESPASSERS. A railroad company owes no duty to a trespasser upon the track until its employes actually see him in a place of danger.

LICENSE. A license to use a railroad track may be inferred from facts and circumstances short of an actual invitation or consent on the part of the company.

RULE APPLIED. For many years the bridge and track of the railroad company at and near the place of an accident had been in almost constant use as a footpath, so that a path had become well worn. Persons living in the neighborhood of the bridge and track, and also the villagers, used the path in going to and from the depot, village and school. The bridge passed over a highway, and access to the bridge was had by means of a ladder. It did not appear who erected the ladder. There was no evidence that the company had ever given license to use the bridge or track as a footpath, or that it had ever attempted to prevent such use. The company's employes knew of the ladder. It was in plain view of all train operatives, and defendant's superintendent had been in a position where he might have seen it. *Held*, that a finding that the bridge and track were used as a footpath, with the consent of the company, was warranted. *Burg v. Railway*, 90 Iowa, 106, *distinguished*.

DUTY OF EMPLOYES. Employes operating a train are bound to keep a lookout for persons on the track with the license or invitation of the company, express or implied, and to exercise ordinary care to discover the presence of and avoid injuring such persons.

*Same*. Employes operating a train are charged with the duty of exercising care, diligence and watchfulness to discover whether persons are on the track at a point where the company has

impliedly assented to the use of the track as a footpath, and the
rule applicable to trespassers does not apply to one upon the
track by virtue of such license.

*Appeal from Marshall District Court.*—Hon. B. P. Bird-
sall, Judge.

Saturday, October 30, 1897.

Action to recover damages for injuries sustained
by Earl B. Thomas, a minor son of the plaintiff, through
the alleged negligence of the defendant company. Jury
trial. Verdict directed for the defendant by the court,
and judgment accordingly. Plaintiff appeals.—
*Reversed.*

*J. L. Carney* for appellant.

*Charles B. Keeler* and *T. Binford* for appellee.

Kinne, C. J.—I. This is the second appeal in this
case. The opinion on the former appeal will be found
in 93 Iowa, 248. After the reversal upon the former
appeal, certain amendments were made to the petition,
the substance of which are incorporated in the state-
ment of the case. Just before noon, on May 15, 1890,
Earl B. Thomas, a minor son of the plaintiff, aged three
years and nine months, was, with another child younger
than himself, upon an open uncovered bridge, which
was located upon the defendant's line of railway, about
one thousand nine hundred feet west of the station of
Rhodes, in Marshall county, Iowa, and, while there,
was run over by a train going west, and his right foot
was so crushed as to require its amputation. The peti-
tion charges that, without fault on the part of his par-
ents, the child went upon the track and bridge, and
was in plain sight from the station, and at all points
upon the road between the station and the place of the

accident; that the defendant's employes, knowing that
the children were on the track, started a train from
the water tank at the station, a distance of about ninety
rods from the bridge, westward (the engine being in
front, but with the pilot attached to the cars), and negli-
gently and carelessly ran the train over the plaintiff's
child; that all of the persons upon the engine knew
that the child was upon the track and bridge, but did
not look along the track over which they were going, or
exercise any care or caution whatever in the operation
of said train or to discover whether or not the track
was clear; that it was a wild train, not running on
schedule time, and was running with the engine back-
ward; that the train was not manned with a sufficient
number of brakemen, and the engine was without steam
or air brakes. It is also charged that the engineer and
other employes on the train saw the said child in time
to have stopped the train and prevented the accident;
that they negligently allowed the engine and cars to
approach and reach said bridge without signal of bell
or whistle, and without any effort to stop said train,
and ran over the foot and leg of said child; that the
roadway and track of defendant's line of railroad
extending from the overhead bridge, just west of the
bridge where the injury occurred, to the station of
Rhodes, was daily and almost hourly frequented by
men, women and children, traveling upon foot, east and
west upon said line of railway; that, for the purpose of
convenience in access to said railway track from the
overhead bridge in connection with the highway, there
had been constructed a ladder by the defendant's
employes, or with their knowledge and consent, so that
persons could have ready access from the highway to
the railway track, and also from the railway track to
the highway; that with the knowledge and consent of
the defendant, and for more than ten years prior to the
accident, people residing in the vicinity of the bridge

and in the town of Rhodes had constantly used the
track of the defendant's railway for the purpose of
traveling to and from the depot, school, and village of
Rhodes, and had used said ladder for the purpose of
reaching the track of the defendant; that the public
generally had leave and license to use said railway
track as a footway, and the child Earl was not a tres-
passer thereon; that defendant's employes were negli-
gent in not exercising watchfulness and care in refer-
ence to the train while it was passing over such part of
the track where pedestrians had license to walk, and
such negligence caused said accident. To the answer
the defendant interposed a general denial, except that
it admitted its corporate capacity, and that the accident
was caused by one of its trains. When plaintiff's evi-
dence was in, the defendant moved the court for a
verdict in its favor, because there was no evidence war-
ranting a verdict for plaintiff; that there was no
evidence sufficient to sustain a finding of negligence on
part of the defendant company or its employes which
was the cause of the accident; that the evidence did not
warrant a finding that the defendant owed to the child
any legal duty of watchfulness and care before his posi-
tion was known, and it is not shown that there was any
want of care after his position was known; that no
license or right upon the part of the child to be upon
the track and bridge had been shown, but he was a
trespasser; that the evidence failed to show any invita-
tion or consent by the defendant to use its track and
bridge as a footway; that the evidence failed to show
that the engineer or other trainmen actually saw the
child upon the bridge before the accident, or, if they
did see him, that they had failed to use all the means
and appliances at their command to stop the train and
avert the accident. This motion was sustained.

II. An important question in this case is as to
whether the child Earl was upon the track and bridge

of the defendant company by leave or license of the defendant. The former trial was had upon the theory that the child had no right upon the track; that he was a trespasser; and that there was nothing in the situation or surroundings requiring the trainmen to be on the lookout for persons on the track. If the child was a licensee, instead of a trespasser, another rule of law may obtain. The evidence which it is claimed shows a license to use the track and bridge as a footway by pedestrians may be briefly stated as follows: For many years prior to the accident, the bridge and track of the defendant company, from the place of the accident to the station of Rhodes, had been in almost constant use by people living in the vicinity of this bridge as a footway in going to and from the depot, school and village. Children of from four or five years old and upward used it as a means of going to and from school. The bridge passed over a private highway, and access to the bridge and track were had by the use of a ladder reaching from this highway to the head block of the bridge above. It does not appear as to who erected this ladder. The bridge was fourteen feet above the highway. There were paths leading from the track to this ladder. These paths were well worn. This track and ladder were also used by persons living in the village who had occasion to visit those living in the vicinity of this bridge. The distance to the village was much less by way of the track than by the highways. There was no evidence to show that the defendant company ever gave leave or license to use this bridge and the track as a footpath, nor does it appear that the defendant company ever made any attempt to prevent such use. The ladder could be seen from the track. The road master of the defendant company and other of its employes had seen this ladder. The superintendent of the company was present at one time while the bridge

was being raised, and the ladder was then attached to the bridge. There is nothing to show that the use of this ladder was ever interfered with by the defendant company. From all of the evidence, it is clear that the footpath and ladder were seen by some of the defendant's employes, and that they were so situated as to be seen by any employe of the defendant company engaged in the operation of its trains.

We held in *Murphy v. Railway Co.*, 38 Iowa, 542, that an instruction in the following language was proper: "If you find from the evidence that the deceased had for a considerable time prior to the accident been accustomed to walk over and upon the track of the railroad company, at and near the place where the accident occurred, by the acquiescence of the company, then the deceased was not a trespasser upon the track, and such permission may be implied if deceased was long in the habit of so walking over the track, with the knowledge of the company or its employes in charge of that part of the road, without objection on their part; and it is for you to determine from all the facts in evidence before you whether or not the deceased had such implied permission." It was said in that case that facts which would be sufficient to constitute ordinary diligence as against a trespasser might not establish such diligence as against a person there by permission. In *Masser v. Railway Co.*, 68 Iowa, 604, it is said: "The evidence tended to show that the track at that point was traveled to some extent by footmen, and that there had been such an amount of travel as to make a path." It was held the facts did not show a license. The court, however, said: "If the travel had been at a point where the defendant's employes were stationed, and it were shown that the footmen occupied the track without their dissent, it may be that the company's assent should be implied." In *Burg v. Railway Co.*, 90 Iowa, 106, it was held that an allegation in a petition that

"for more than ten years defendant's roadbed and right
of way, from a point west of where the accident hap-
pened to the city of Des Moines, has been used by the
public as a thoroughfare to and from said city of Des
Moines, which fact was well known to the defendant
and its employes," did not state facts from which the
law would infer a license. In that case it was said: "We
are not saying that there might not be such a use of the
track as that the assent of the company might be under-
stood and implied therefrom, but no such state of facts
is pleaded." In *Richards v. Railway Co.*, 81 Iowa, 430,
it was held that the facts did not show a license or
invitation to people to walk along the defendant's
tracks, and that the fact that it did not forbid their
doing so could not be given the force of an invitation.
The court said: "It may be there was evidence of such
habitual use of the tracks by the public, which use was
known to the employes of defendant, and not dis-
proved, that the jury would have been authorized to
find that plaintiff had an implied license to use the
right of way as he did. But, if that be true, defendant
was under no obligation to protect plaintiff from harm
by taking steps to prevent it, unless it had so
acted as to mislead him. It was the duty of defendant
not to injure him wantonly or wilfully, but if it had
done no act to mislead, and had no reason to anticipate
the danger to which plaintiff exposed himself, it owed
him no active duty." In *Clampit v. Railway Co.*, 84
Iowa, 71, it was held that, one using a railway track
for crossing at a place daily used for a considerable
time by a number of persons, some of whom had con-
structed a stairway by the track for the use of pedes-
trians, and when a crossing over a ditch had been made
by some one unknown, and the defendant had done
nothing to prevent persons from crossing said track,
and the use of such place as a crossing was known to

the employes of the defendant, it would be presumed to assent to such use, and that it was a license, and the plaintiff, in using it, was not a trespasser. On the former trial of this case we said: "It may also be remarked in this connection that a license to use the track of a railroad company may be inferred from frequent use, in connection with other circumstances from which an implied invitation may be inferred."

From the foregoing cases it appears that this court has often recognized the doctrine that a license to use a railway track may be inferred from facts and circumstances short of an actual invitation or consent on the part of the railway company. The question, then, before us, is: Are the facts and circumstances disclosed in this record such as to warrant a jury in finding an implied invitation or license to use the track by footmen? It may be admitted that the facts in this case touching the circumstances surrounding the use of the track are in some respects not the same as in *Clampit's Case;* yet they are in all essential respects save one much alike. In the case at bar the use of the track was not merely for crossing purposes. In that case the court said: "The stairway and the ties across the ditch, as well as the path made by footmen, prominently advertised the place as a crossing used by pedestrians. No engineer or fireman passing along the tracks at that place, with his eyes open, in the exercise of reasonable watchfulness and care, could have failed to see these indications of a footpath, and to understand therefrom that it was used by pedestrians, if he possessed ordinary intelligence." This language applies as well to the facts in the case at bar. Here was an almost constant use of this track. Here were well-defined footpaths, and a ladder in use for years, for the purpose of reaching the track. The track repairers knew the ladder was there. The road master

had actual knowledge of it. The superintendent had once, at least, been where, if he used his eyes, he must have seen it. It was in plain view of all of the train operatives. It does not appear that the ladder was ever used for any purpose except as a means of getting onto the track; and, with the fact undisputed of the use of the ladder, paths, and track for years without objection from the defendant or any of its employes, all these and other facts would warrant a finding by a jury that the use of the track was by the consent of the defendant, and therefore the child Earl was not a trespasser.

III.   If the rule of law as to care to be exercised by the employes of the company operating its train is the same towards one who is a mere licensee by virtue of an implied invitation from the defendant as it is in case of a trespasser upon the track, it was not necessary to submit this case to the jury for the purpose of determining which of these relations this child occupied towards the defendant company.   As is said in the opinion on the former appeal in this case, if the child was a trespasser, then the company owed him no duty until its employes actually saw him on the track in a place of danger; that they were not bound to keep a lookout for trespassers, and were not negligent in failing to discover trespassers upon its track.   *Masser v. Railway Co., supra; Burg v. Railway Co., supra; Morris v. Railway Co.*, 45 Iowa, 29; *Richards v. Railway Co., supra; Thomas v. Railway Co.*, 93 Iowa, 248.   Appellant contends that this should not be the rule even as to trespassers.   Such has been the uniform holding in this state, and, unless there are cogent reasons for departing from it, it should not be changed. We discover no sufficient reason for changing this rule, which has always been consistently adhered to by this court.   The important question now is, does this rule apply with like force and effect to one who may be

found to be a licensee by invitation of the company, implied from all the surrounding circumstances? The general current of authority undoubtedly is that the same rule ordinarily applies in both cases. 3 Elliott, Railroads, sections 1154, 1249-1251, and cases cited; Beach, Contributory Negligence, section 212, and cases cited. Indeed, it is held that one using a railway track as a place of crossing or a footpath, with the silent acquiescence of the company, or with the knowledge or passive permission of the company, is, at most, a bare licensee, who takes his license with all of its concomitant risks and perils; and, as a general rule, the company owes him no greater duty than that which is due to a mere trespasser. 3 Elliott, Railroads, section 1154, and cases cited. Such is undoubtedly the general trend of the authorities in this country. In our own state, in *Richard's Case,* this doctrine seems to be recognized and applied as to one walking along the track; while in *Clampit's Case* (the last expression of this court upon this subject) it is expressly held that one crossing the track of a railroad company under circumstances as to uses of the track much like those of the case at bar "was entitled to all the rights and protection of one rightfully upon it with the license of the defendant. He may recover for injuries resulting from the defendant's want of care, if not contributing thereto by his own negligence." Owing to the age of the child Earl, there can be no question of contributory negligence in this case. If the rule laid down in *Clampit's Case* is to be adhered to as to one crossing the track, we see no escape from the conclusion that this case should have been submitted to the jury under proper instructions of the court, for them to determine whether the child was a trespasser or licensee, and, if a licensee, whether the employes of the defendant exercised that care to discover his presence upon the track, where, from the

license given, they had a right to expect persons might be. We believe the rule announced in *Clampit's Case* a just one, as applied to the facts in that case. It amounts to saying that, when the company had impliedly assented to the use of its track by persons as a footpath, its employes operating trains are charged with the duty of exercising care, diligence, and watchfulness to discover if persons are on the track at these places where they have recognized their right to be. We are not holding that at every place, and continuously along the line of a railway, the employes operating trains must be on the watch for trespassers. What we do hold is that as to persons rightfully on the track by the license and consent of the company, whether such consent be expressed in words or arise by implication, a duty rests upon the company and its employes to be on the watch for such persons at the places they may be expected to be, in view of the license and consent given.

So, in this case, if the boy Earl was a licensee, and not a trespasser, and at a place where the company had impliedly assented to the use of its track as a footpath, it was the duty of those operating the train to exercise watchfulness and care to ascertain if persons were on said track at said place. If the jury should find that Earl was a licensee, then they must determine, in view of all of the evidence, whether the employes of the company properly discharged that duty, and, if they did not, whether the failure so to do resulted in causing the injury.

IV. Without referring specifically to the several complaints as to the rulings upon the introduction of evidence, it may properly be said that most of the rulings against the plaintiff impress us as technical, and some of them as incorrect. We do not say more, as it is not likely that on a re-trial the same questions and rulings will appear. We have, in view of another trial.

refrained, so far as possible, from discussing the weight of the evidence. The appellee's objection to the record is not well taken, and appellant's motion to strike the additional abstract is overruled. For the reasons given. the judgment below is REVERSED.