LAURA M. CROFT, Appellee, v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

**Railroads:** INJURY TO LICENSEE: EVIDENCE. Proof that a station agent received his orders from, worked under and made his reports to a certain person as superintendent of that division, was sufficient to show that such person was in fact the superintendent, that the conduct of the station came within the scope of his duties and was therefore known and acquiesced in by the defendant company.

**Same:** INSTRUCTION. In an action for injury to the wife of a station agent while assisting her husband with his work, an instruction that if she was there with the consent of her husband, as was her custom and this was known to and acquiesced in by the superintendent the defendant company would owe her the duty of ordinary care, was not subject to the objection that the jury might conclude that her presence with consent of her husband alone imposed a duty on the company,.

**Same.** Where the wife of an agent while assisting her husband as was her custom, known to defendant, was injured by the derailment of a train claimed to have been operated at an excessive speed over a defective track, an instruction that defendant was under no obligation to repair its track for her protection but did owe her the duty of ordinary care in the use of the track, was not objectionable as eliminating the claim of defective track.

**Care as to licensee.** The wife of an agent whose custom is to assist her husband in his duties at the station, which fact is known to the officers of the road, is a licensee and the company owes her the duty of exercising due care to avoid inflicting injury upon her while so engaged.

**Same:** EVIDENCE. The fact that the railway company posted in the waiting room a notice forbidding all persons except designated employés from entering the station office was not conclusive of plaintiff's right in the office, but a fact among others to go to the jury as bearing on the general question of defendant's consent to her presence in the office.

**Negligent operation of train:** EVIDENCE. The evidence, in view of the defective condition of the track, is held to warrant a finding that the train which left the track and injured plaintiff while in the station office was being operated at a dangerous rate of speed.

*Appeal from Muscatine District Court.*— HON. A. P. BARKER, Judge.

TUESDAY, SEPTEMBER 25, 1906.

REHEARING DENIED, FRIDAY, JANUARY 18, 1907.

ACTION to recover damages arising out of a personal injury. The case was tried to a jury resulting in a verdict and judgment in favor of plaintiff, and the defendant appeals.— *Affirmed.*

*Carroll Wright, J. L. Parrish,* and *Carskcaddan, Burk & Pepper,* for appellant.

*E. M. Warner* and *Richman & Richman,* for appellee.

BISHOP, J.— The accident resulting in the injury of which plaintiff complains, occurred at Buffalo, this State, a station on the line of defendant's railway. Plaintiff's husband, S. H. Croft, was agent for defendant at said station, and resided with his family in a portion of the depot building provided by defendant for that purpose. Passing through Buffalo, the railway tracks run east and west, the one used by west-bound trains being nearest the depot building. The building is one story in height, and a platform extends the full length east and west. The waiting room for passengers is located at the extreme west end. There

is then an office with a bay window looking out upon the platform, then a freight room, and then the living rooms for the agent at the extreme east end.  From the waiting room, the freight room, and the living rooms, doors open out upon the platform.  The office is entered by one door leading from the waiting room and another leading from the freight room.  In brief, the circumstances of the accident were that as a west-bound freight train, being drawn by two engines, was passing through the station the rear engine and a number of cars became derailed; one of the cars so derailed — a stock car loaded with railroad iron — crashed into the building, demolishing the entire building with the exception of the agent's living rooms.  At the moment of the accident plaintiff was in the office room assisting her husband in his station work, and she was caught in the wreckage and sustained severe injuries.  The gravamen of the action is negligence, and the averments in respect thereto are that the condition of the track at the place where the derailment took place was defective in that the ties were old and rotten to such an extent that the rail spikes " had very insecure hold therein, and the said ties were so rotten and weak as to be of insufficient strength to prevent the spreading of the rails under the weight of a train running thereon ; " further, that when the train in question which was a heavy one, drawn by two locomotives, and which was being run and operated at a very rapid and dangerous rate of speed, came upon such defective track, the rails thereof, because of the rotten and defective ties, spread and caused the train to leave the track.  The answer is a general denial.

I. As we have seen, plaintiff was in the office room of the depot at the time of the accident.  It was made to appear on her behalf that the duties of her husband as station agent

1. RAILROADS: injury to licensee: evidence.

were onerous and that during the years of his occupancy of the position she had been accustomed to go into the office almost daily and assist him in his work.  Over the objection of defendant, plaintiff was

then permitted to show that the course of conduct thus pursued was well known to and acquiesced in by defendant's superintendent in charge of the division. The point of the objection was that it did not sufficiently appear that the person designated as superintendent was in fact such; further, that no showing had been made that the matter of the conduct of the business of the station came within the scope of the powers and duties of the superintendent. There was direct evidence that the person named acted as superintendent, and the husband of plaintiff testified that he received his orders from, worked under, and made his reports to such person as superintendent. It is not conceivable that the defendant was ignorant of the course of business thus disclosed. In view thereof, we think a conclusion of authority and duty was warranted, and hence that the introduction of the evidence involved no error.

II. By the fourth instruction, given by the court on its own motion, the jury was told in substance that if previous to the time of the accident, plaintiff was in the habit of 2. SAME: going to the ticket office to assist in the work instruction. thereof, and that this was with the consent of her husband, the agent, and known to the superintendent of the division, who either assented thereto or made no objection to her presence there, then she would have the right to assume that her presence was with the consent of defendant; that under such circumstances her relation to defendant would be that of a licensee — " that is, a person there with the consent of defendant with knowledge that she was likely to be there at such times." It is then said that " as to her, as such licensee, defendant would be under no obligation to change the condition of its track for her protection even after it knew of such habit on her part and assented thereto — provided you find such to have been her habit and that defendant did so assent — but it would owe her the duty of ordinary care in the use of such track, having regard to its condition to avoid injury to her. If it failed in the ex-

ercise of such care she could recover against it." A criticism of this instruction made by counsel for appellant — and apparently presented in this court for the first time — is to the effect that it was error to include any reference to the fact that plaintiff's presence in the office was on the invitation or with the consent of her husband. The precise point made is that " the jury would rightfully conclude from this language that the consent and invitation of her husband and acceptance of her services in his own behalf created a rela-tion by the plaintiff to the defendant, imposing an obligation upon the part of the defendant to her." There is no merit in this criticism. In its last analysis, the material question at issue was the rightfulness of the presence of plaintiff in the office. Now it will be borne in mind that the consent of defendant relied upon was tacit in character. And as we read the instruction, the fact of the husband's consent is recited merely as one of the possible facts making up the situation presented to the defendant through the knowledge and understanding of its superintendent. If true, therefore, the fact was proper to be considered in giving interpretation to the silence of such superintendent. Upon no view could it be concluded, as counsel seem to think, that the inclusion of the language objected to, carried with it the suggestion that should the jury find that consent of the husband was given, a finding of employment by defendant would be warranted. By no fair intendment could the language used be given such interpretation. Moreover, by the instruction as a whole, all question of employment was excluded from consideration. In express language, plaintiff was assigned position as licensee.

III. The more serious contention of counsel for appellant having reference to instruction No. 4 is that giving character thereto as the law of the case the defendant was entitled there-under to a verdict, and hence error arose upon the refusal of the court to grant a new trial. The argument here is: First, that by the instruction the

3. SAME.

charge of a defective and negligent condition of the track was eliminated from the case as a basis for recovery; second, that the record contained no proof that the train was being operated at a high or dangerous rate of speed. The fact questions involved in the contention will be discussed further on in the course of this opinion. We shall stop at this time only to consider whether as matter of law there is merit in the first point of the argument thus made. Going directly to the subject, we are agreed that the instruction does not warrant the broad conclusion contended for by counsel. Considering plaintiff as a licensee, the jury is plainly told that while the defendant was under no obligation to change the condition of its track for her protection, still it was its duty to exercise ordinary care in the use of such track, having regard to the existing condition, so that injury might not result to her. Instead of eliminating the condition of the track from consideration, therefore, the instruction makes assignment of the relative place or connection in which such condition is to be given consideration. And, clearly enough, this accords with sound doctrine. The defective condition of the track, if such in fact existed, considered by itself, and unconnected with its use for train operation, could not constitute a menace to any one in or about the depot building situated as shown by the evidence several hundred feet distant. Thus considered, it may be conceded that there was no duty on the part of defendant to guard or repair. And negligence cannot exist in the absence of an affirmative duty. But quite a different question is presented where the averment is that as related to persons rightfully in or about the depot building there has been a conscious failure on the part of defendant to observe due care in making active use of such defective track; as, for instance, that it proceeded to operate a heavy train over it at a high and dangerous rate of speed, culminating in a derailment and wreck, and whereby injury and damage resulted to such persons. In such case the condition of the track becomes material to be considered

because of the character and result of the use thereof.    There is, as we shall see more fully presently, a positive duty on the part of every railroad company to maintain its tracks, and to so operate its trains over them as that persons rightfully in proximity thereto shall not be injured.    Now the averment of plaintiff fairly construed is not of separate acts of negligence, the one rooted solely in the defective track condition, and the other related only to the weight and speed of the train.    It is of one act of negligence arising out of a conscious attempt made by defendant to operate a heavy train rapidly over a piece of track unsuited to the purpose because of having been allowed to become out of repair.    In our view, the instruction fairly made a question in the respect under consideration for the jury, and hence the error contended for does not exist.    .

IV.    It will be remembered that plaintiff claims in respect of her presence in the depot office that she was there assisting her husband, and at his request and with the knowl-

4. CARE AS TO    edge and consent of the defendant.    On the
LICENSEES.    assumption of the truth of these facts, the
.court in the fourth and other instructions gave to her the designation of a licensee.    Accepting this as a correct designation, counsel for appellant argue at length, and with much earnestness, that the defendant owed her as such licensee no duty save to refrain from inflicting upon her a wanton or willful injury.    It is no part of the argument of counsel for appellee that the injury suffered by plaintiff was wantonly or willfully inflicted, and we have no occasion to consider the case from that point of view.    Taking up the argument as made, it may be conceded that in favor of a bare licensee on railroad property the company owes no duty to guard or repair in respect of the conditions which inhere in the property itself, or in respect of the usual and ordinary operation of trains over its tracks.    And this is the doctrine of the authorities cited and relied upon by counsel for appellant to overthrow the judgment.    But in the case before us

a recovery was not sought on grounds calling for the application of such doctrine. The conditions inhering in the depot building had nothing whatever to do with the accident. And, as to the matter of the train operation, the contention was for affirmative and active negligence. Even as to a licensee, known to be on railway property or whose presence may reasonably be expected, the company owes the duty to avoid acts of negligence affirmative and active in character. Such is not only wholesome doctrine, but it is clearly the rule of our cases. *Murphy v. Railway,* 38 Iowa, 539; *Clampit v. Railway,* 84 Iowa, 71; *Thomas v. Railway,* 103 Iowa, 649. The cases arising elsewhere in which a similar rule has been adopted and enforced are quite fully collected in the opinion in the Clampit case, and we need not stop for further citation.

Now a licensee, as that term is used in connection with railway property, and the operation of railway trains, is one who goes upon the station grounds or tracks for purposes other than transportation by permission either express or implied. The permission is express, of course, when given in terms; it is implied when the use is tolerated or acquiesced in under such circumstances, or, being known, is allowed to continue for such a length of time as that permission should be inferred. Murphy v. Railway, *supra;* Kay v. Railway, 65 Pa. 269 (3 Am. Rep. 628); *Berry v. Railway,* 124 Mo. 223 (25 S. W. 229). It follows that if plaintiff was accustomed with frequency to leave her living rooms in the depot and go into the office to assist her husband in his station work, and this was known to the officers of the defendant in charge of the division, and her conduct was acquiesced in, or at least, not objected to by them, then the rightfulness of her presence there cannot be open to question. She was, to say the least, a licensee whose presence was to be expected, and to whom the defendant owed the duty of exercising due care to avoid inflicting injury upon her. And in this view a case was made proper to be submitted to the jury.

V. But counsel for appellant insist that the question of the rightfulness of the presence of plaintiff in the office is controlled by the fact that about a month previous to the accident the defendant caused to be tacked up on the waiting room side of the door leading from that room into the office a notice forbidding all persons except station employés, general officers, and telegraph repairers from entering the office. This is to attach to such fact a degree of importance it does not deserve. In its relation to the case, it was simply one fact, among others, to go to the jury bearing upon the general question of defendant's consent to plaintiff's presence in the office. The claim of the defendant that her presence was not only without consent, but was in direct violation of a known rule, was submitted to the jury in the third instruction given, and in terms as favorable to defendant as it could in reason expect. There was no request for further instruction on the subject.

5. SAME:
   evidence.

VI. Finally, it is insisted that the finding of negligence is not supported by the evidence. Counsel say in argument that not only did plaintiff fail to substantiate her allegation that the train was running at a high and dangerous rate of speed, but that the evidence conclusively shows that, at the point where derailment took place, the track was in a reasonably good condition. The derailment is shown to have taken place· at or near the east switch. And, beyond serious controversy, there was in that vicinity a greater or less number of rotten and loose ties to which the rails were not and could not be securely spiked. The precise point at which derailment took place is involved in more or less controversy. We shall not attempt to discuss the testimony. It is sufficient to say that a finding was warranted to the effect that derailment came when the train reached the rotted ties and insecurely spiked rails. The only witness who testified directly as to the speed of the train said that it was running at a rate of about thirty-five miles an hour. In addition to this there was the fact

6. NEGLIGENT
   OPERATION
   OF TRAIN.

that the lengthy and heavy train, with one of the engines and nearly all of the cars off the track, ran about seven hundred feet before it crashed into and demolished the depot and was brought to a standstill. We think that from this, and the jury having found the existence of a defective condition of the track at the place of derailment, a finding was warranted that the train was being operated at a high and dangerous rate of speed in view of such track condition. This being true, a conclusion for negligence was warranted.

Other contentions of the appellant are either disposed of by what has already been said, or are without merit. Finding no error, the judgment must be and it is *affirmed*.