ALBERT J. SNIPPS, Appellee, v. MINNEAPOLIS & ST. LOUIS RAILROAD COMPANY, Appellant.

**Negligence:** EVIDENCE OF GENERAL CUSTOM. Where plaintiff alleged in
1  an action for injuries caused by an explosion of gasoline which escaped from defendant's pumping engine, that it was the custom for shippers of stock to start the engine and to go into the pit to prime the pump with water, evidence that shippers other than plaintiff had been in the habit of starting the engine and thus priming the pump, was admissible for the purpose of showing an invitation and general custom of so doing.

**Same:** EVIDENCE. Evidence that the foreman of defendant's water
2  supply had been instructed to permit no one except employees of the defendant to enter the pump house was properly rejected, where it appeared that shippers of stock were generally allowed to pump water for their stock, and it did not appear that plaintiff knew of the order.

**Same:** INJURY TO INVITEE. Where the evidence tended to show an
3  invitation to shippers of stock to enter the pump house and operate defendant's engine and pump for the purpose of watering their stock in defendant's yards, the defendant was required to use reasonable care to maintain its pump and engine in a reasonably safe condition for use.

**Same:** PROXIMATE CAUSE: EVIDENCE. Where the evidence tended to show that it was the custom of shippers to use defendant's pump for watering stock, and in doing so it was necessary to go into a pit to prime the pump, using a light, and an explosion of gas occurred as the result of a leakage of gasoline from the engine above, resulting in injury to plaintiff, which conditions were known or in the exercise of reasonable care should have been known to defendant in time to have remedied the same, the dangerous condition of the engine and pump was the proximate cause of the injury. Evidence held to require submission of the issue of proximate cause to the jury.

**Same:** REPAIR OF DEFECTS: INSTRUCTION. An instruction in this case that if defendant had notice, either actual or constructive, of the defects complained of and failed to repair the same it would be chargeable with negligence, was fundamentally erroneous in failing to state such notice must have been for such length of time that defendant, in the exercise of reasonable care, might have repaired the defects before the injury occurred. Independent of any request or failure to request an instruction upon that point it was the duty of the court to give it.

**Same:** INSTRUCTIONS: ASSUMPTION OF FACTS. The instruction in this case, which assumed the right of defendant to be at the place where he was injured, a fact which was in dispute, was erroneous for that reason.

*Appeal from Winnebago District Court.*—HON: M. F. EDWARDS, Judge.

TUESDAY, MARCH 24, 1914.

ACTION to recover damages for injury resulting from the explosion of gas in a pit adjacent to and a part of a pumping plant of the defendant. From a verdict and judgment for plaintiff, the defendant appeals.—*Reversed.*

*Price & Joyce,* for appellant.

*Oliver Gorden* and *Morgan & Meighen,* for appellee.

WITHROW, J.—I. Plaintiff's cause of action is based upon injuries received by him from a gasoline explosion in defend-

ant's pumping station connected with its stockyards in Forest City, Iowa. He pleads: That the defendant maintained its pumping plant at its stockyards for use by anyone shipping stock on its line of railroad, and for the purpose of supplying water for stock while in its yards. That at and prior to June 23, 1911, the day of plaintiff's accident, it had been the custom and practice of the defendant to permit and require stock shippers who had stock in its yards to start and operate the gasoline engine and pump when water was needed by them, and it was the custom and practice of defendant's agent to give to stock shippers using water the key to the house in which the pump and engine were situated, and to direct them to start the engine and pump, and it was also the custom to permit shippers to enter the pumphouse without a key whenever the door was unlocked. That on and for a long time prior to June 23, 1911, the defendant negligently permitted the pump to become defective and out of order, and it could not be started without being primed, to do which it was necessary to go down into the pit, near the pumphouse, and, the pit being deep and dark, it was necessary to have a light by which to see to prime the pump. That prior to said date the defendant negligently permitted the gas tank and engine to become leaky, causing the gas to run out into the pit. That the defendant had notice and knowledge of such dangerous condition. As the cause of his injuries, the plaintiff claims that, having occasion to water his stock there in the yard, at the invitation of the defendant he went into the pumphouse to start the engine, but it did not draw water, and that to prime the pump he went into the pit, and to aid him in seeing lit a match, following and as a result of which there was an explosion of the escaped gas, causing to him the injuries for which he claims damages. The defendant answers by general denial, and pleads contributory negligence of the plaintiff. The jury returned a verdict for the plaintiff, and, from the judgment entered upon it, this appeal is taken.

II. The evidence introduced on the part of the plaintiff tended to show that it was the custom and practice of the agent of the defendant to, upon request, either unlock the pumphouse or give the key to the shipper, that water might be had for stock in the yards for the purpose of shipment. The plaintiff testified that the defendant's agent had previously showed him how to put on the spark and give gas to the engine. Other witnesses testified that for a considerable time previous to the accident the pump had required priming, and that the agent had at first corrected the trouble, but later permitted them to do so when they needed water. By others it was testified that they had noticed the smell of gasoline in the pumphouse, and this quite frequently and for a considerable time before June 23d, and on that day. The station agent testified that he did not grant permission to patrons to start the engine and pump; that he permitted no one to run the machinery.

The plaintiff testified that at the time in question there were in the yards a number of head of range horses shipped in by him the day before, and kept in the yards for the purpose of sale, there being on the day of his injury a number of possible buyers present. The evidence tends to show that the privilege of thus keeping stock in the yards for a reasonable time after delivery for the purpose of sale had been granted by the railroad company to the plaintiff, and had been by him so used at different times; but nothing was paid for rent or water. Further statement of the evidence is not required to determine the questions raised by the assignment of errors.

III. A witness, one Will Lumberg, was permitted to testify, over the objections of the appellant, that he was once down in the pit with the agent to prime the pump, and at other times alone for the same purpose. It is claimed that the evidence was incompetent to seek to establish an invitation to plaintiff. Testimony of like nature was given by John Lumberg,

1. NEGLIGENCE: evidence of general custom.

to which exception was taken. To it the objection was made that it did not tend to show an invitation or permission to others than the witness. The claim in the petition was that it was the custom and practice to permit shippers to so do. These witnesses were within that class, and, while evidence as to a special permission to them would not of itself establish a custom as to shippers generally, it was competent as bearing upon the ultimate question of custom, for, while a general custom must be shown by facts which disclose that it is observed generally by the class who follow it, this necessarily is made up of individual instances, which when combined show its general recognition.

There was no error in admitting the testimony.

IV. A witness, M. D. Colt, presented by the defendant, testified that he was foreman of the water supply of the railroad company, that he had received instructions as to who 2. SAME: evidence. should be allowed to go into this pumphouse, and that no one other than an employee or some one under his direct supervision should be permitted to enter it. Upon motion the answer was stricken out as immaterial, and exception was taken. Other witnesses were offered on the same question. The theory upon which the evidence was offered was that the company did not know that the use of the pumphouse by others than the agent had been permitted, and that, if such was done, the agent acted beyond the scope of his authority. It appearing that the agent had charge of the buildings and yards of the company, any prohibition of its use for purposes incidental to the business of the company would not be binding upon persons permitted by the agent to so use it, without knowledge of such prohibition. See 1 Thompson on Negligence, 530; *Croft v. Railway Co.*, 132 Iowa, 695. As there was no evidence tending to show knowledge by plaintiff of a withdrawal of the permission which the evidence tends to show had been granted, the offered evidence was immaterial.

V. It is urged by the appellant that under the facts

there was shown to have been no duty from it to the appellee, and, without such duty, there could be no negligence. This position is based upon the thought that he was at most a licensee entering by permission only, under which conditions the owner cannot be held liable for inherent defects in the premises, and that such a licensee goes at his own risk, and subject to all perils incident to the place. The evidence in the case tended to show that there was an implied if not an express invitation to shippers to pursue the course followed by the appellee at the time of his injury, in providing water for the stock. That which was being done by him was for a purpose connected with the business in which he was then engaged—the care and disposition of his horses which had been permitted by the appellant to be kept in the yards for sale after delivery. Assuming such to be the facts, and the evidence tends to so show, the appellee was rightfully there, attempting to do that which was necessary and proper in the care of his horses, and which was usually and customarily done by shippers or occupants of the yards, with knowledge of such custom by the appellant through its agent. Under such facts there arose a duty upon the part of the appellant to exercise ordinary care to keep the property so used in a reasonably safe condition. *Croft v. Railway Co., supra; Thomas v. Railway Co.,* 103 Iowa, 654; *Clampit v. Railway Co.,* 84 Iowa, 71; 3 Elliott on Railroads, Section 1249; 1 Thompson on Negligence, Section 968.

*3. SAME: injury to invitee.*

It is claimed by appellant that, if the facts were such as to require submission to the jury upon the question of the permission to use the pumphouse, such did not extend to the pit where appellee received his injury. We think this position cannot be upheld. If there was the right to use the pump, and if, as the evidence tends to show, there had been the further recognized right and permission to go into the pit for the purpose of priming the pump, then the duty as to exercising ordinary care would extend to that situation,

as it was connected with and under the circumstances, a necessary part of that needed to be done to supply the horses with water.

VI. With this conclusion as to the duty of appellant, and of the degree of care required under such conditions, we then consider the errors urged as to instructions given

4. SAME: proximate cause: evidence.

by the trial court. Instruction No. 3 was a statement of what the plaintiff was required to prove to entitle him to recover. The various subdivisions of the instructions stated the different necessary elements to the required total proof, all of which, excepting divisions 8 and 9, as to their correctness coming within the conclusions we have stated in the foregoing divisions of this opinion. Objection is made to subdivision 8, for the reason that it submitted the question of negligence in permitting the pump to become defective and out of order, requiring priming, and in permitting the gas tank and pipes to leak, making the pit dangerous and liable to cause an explosion. The criticism is that the condition of the pump was not a proximate or contributory cause to the injury, and that there was no evidence to support the submission as to the leaky condition of the tank and pipes. As to the first ground it may be said that, if the priming of the pump was a necessary part of the work in getting water, and if to do such it was necessary to enter the pit and use a light, and if the presence of gas in the pit occasioned danger, and if these conditions were known to the appellant, or in the exercise of reasonable care should have been known, in time to have repaired or remedied them, there was then such connection between cause and effect, that natural and continuous sequence without an intervening cause, that would properly designate the alleged dangerous condition of the pit as the proximate cause. 32 Cyc. 745.

This court, in *Liming v. Ill. Cent. Ry. Co.*, 81 Iowa, 246, quotes with approval the rule as follows: ''A person guilty of negligence should be held responsible for all the conse-

quences which a prudent and experienced man, fully acquainted with all the circumstances which in fact existed, whether they could have been ascertained by reasonable diligence or not, would have thought at the time of the negligent act reasonably possible to follow, if they had been suggested to his mind." Measured by this reasonable test, there was no error in submitting to the jury that feature of the case, for it would naturally come to the ordinary mind that, from a condition of escaping gas surrounding a pump requiring priming, with artificial light necessary to do the work, the combination of the two elements danger would arise, and disaster probably follow. This, of course, does not take into consideration the duty of the appellee under such conditions, such arising under the plea of contributory negligence, and which was properly submitted to the jury. As to the latter ground of objection, the proof made it, also, a question for the jury.

VII. The objection to subdivision No. 9 of instruction No. 3, raises the same question presented in the objection to instruction No. 8, which as given was as follows: "You are instructed that, if the defendant, through its agent, servant or employees, whose duty it was to look after and see to said pumping station, gasoline engine, pump, and connections, in charge for the use for which the same were erected and used, had actual or implied notice of the defects in the same, or might, in the exercise of reasonable diligence, have known of said defects, if any you find, before the injury complained of occurred, and on such notice, if any, failed to repair the same, then and in that case the defendant is liable and chargeable with negligence."

5. SAME: repair of defects: instruction.

The instruction in defining the duty of the appellant required notice, either actual or implied, of the defects which are alleged to have caused the accident as an element in finding negligence. It is faulty, in that it fails to state that which always is necessary as a full statement of the law upon

that proposition, that the notice, whether express or implied, should have been in such time that the defendant, in the exercise of ordinary care, could have repaired it before the injury. *Escher v. Carroll County*, 159 Iowa, 627; *Connolly v. Des Moines,* 130 Iowa, 633.

The plaintiff's case was brought upon the theory that such notice was necessary; that being pleaded as a separate paragraph in the petition. It was, as we conclude, the only theory upon which the case could be presented, as the appellant was held only to the exercise of reasonable care in avoiding the possible danger to those who might so use the premises under the custom; and this degree of care did not make it the insurer of the safety of those who should thus go on the property. The appellee claims, however, that, as the appellant requested no instruction upon that point, and the court having instructed generally upon the issues and the different phases of the case, that complaint cannot now be made of a failure to so instruct. But the question of notice and reasonable time to correct the condition was a part of the law of the case necessary to the right of recovery, which the jury was entitled to have, and which the parties had the right to expect would be given; and independent of request, or failure to request an instruction upon that point, it was the duty of the trial court to give it. As given the instruction required a less degree of proof than the law fixes as necessary, and was, therefore, erroneous. *Overhouser v. Am. Cereal Co.,* 128 Iowa, 586; *Upton v. Paxton,* 72 Iowa, 299; *Seekel v. Norman,* 71 Iowa, 264; *Owen v. Owen,* 22 Iowa, 270.

It is not within the rule relied upon by appellee, and in support of which many of our cases are cited, to the effect that, when an instruction given is correct so far as it goes, failure to give more specific instructions will not be error, unless they have been requested. There is an omission to include within the rule as claimed by appellee the vital provision that the court must have given to the jury a correct statement of the law, which means the governing rules of the

particular case; and, for want of detail in expression or application to particular phases of the evidence, to ground error there must have been a request for such additional instruction.

VIII. Instruction No. 4, as given by the trial court, was in part as follows: ''It was the duty of the defendant to use ordinary care to keep said pump in repair and working order, and said engine and gas tank and pipes connected therewith from becoming leaky, and said pump pit from becoming dangerous, so as to avoid injury to plaintiff at and before the time of the injuries sued upon herein. If said defendant exercised ordinary care as here stated, the defendant was not negligent.''

6. SAME: instructions: assumption of facts.

The balance of the instruction did not bear upon this paragraph by way of enlargement or limitation. We have earlier referred to the elementary rule that there can be no liability without primary duty, and this is followed by the further rule that duty on the part of one does not exist as to all, but only as to such as may, by reason of relations, invitation, permission, or other circumstances, be entitled to its observance as an element entering into their rights. There was dispute in the facts as to right of appellee to have been at the place where he was injured; without such right, there was due him no duty. The instruction, by its terms, necessarily assumed facts which showed his right to be there; otherwise the rule as given as to duty would not be applicable as broadly stated. It should have been qualified and made to depend upon the finding of necessary facts by the jury. We think that as given it was wrong.

IX. What we have said sufficiently indicates our views upon the questions raised as to the refusal of the trial court to direct a verdict because of the insufficiency of the evidence to show liability under the facts. Such was for the jury; but because of the errors found the judgment of the trial court is—*Reversed*.

LADD, C. J., and DEEMER and GAYNOR, JJ., concurring.