JUAN FIGUEROA LUGO ET AL., Plaintiffs and Appellees, *v.* AMERICAN RAILROAD CO. OF PORTO RICO, Defendant and Appellant; AND JORGE VEGA MERCADO ET AL., Defendants.

No. 8949. Argued November 9, 1944.—Decided December 20, 1944.

Mariano Acosta Velarde, Federico Acosta Velarde, and Donald R. Dexter, for appellant. R. Atiles Moréu for appellees.

Mr. Chief Justice Travieso delivered the opinion of the court.

On May 7, 1942, Juan Figueroa Lugo and Victoria Guerra Arce brought an action for damages against The American Railroad Company of Puerto Rico and its employees, Jorge Vega Mercado and Simón Vidot Ruaño. In the complaint it is alleged, in substance, that (a) the plaintiffs are the legitimate parents of Gladys María Figueroa Guerra, two years and eleven months old, who died on April 27, 1942, in consequence of injuries sustained by her the day before; (b) that said injuries which resulted in her death, were caused by a locomotive, owned by the defendant company and operated by the above-mentioned employees; (c) that the accident was due to the negligence of the defendant's employees in running at great speed the train which struck said child, without sounding any warning or signal,

or reducing its speed, before or after passing the place of the accident, and without taking reasonable precautions to avoid said accident; (d) that by reason of the death of said child, the plaintiffs have suffered grief, physical pain, and mental anguish and have been deprived of the comfort, support, and assistance which said child might have given them in the future; for which reason they pray for an award of ten thousand ($10,000) dollars, with costs and attorney's fees. The defendants answered and specifically denied all the averments of the complaint, and as new matter alleged that, if in the accident which caused the death of the child there was any fault or negligence on the part of the defendants, there was also contributory fault or negligence on the part of the plaintiffs or the child and that such fault or negligence of the plaintiff or of the child was the sole, proximate, and immediate cause of the accident; and therefore they prayed that the complaint be dismissed and the plaintiffs adjudged to pay costs and attorney's fees.

After the case was tried and evidence was introduced by both parties, the lower court rendered judgment awarding three thousand ($3,000) dollars as damages to the plaintiffs, together with costs and two hundred fifty ($250) dollars as attorney's fees. The defendant company thereupon took the present appeal. It urges that the lower court committed manifest error of fact and of law (1) in finding that the child, Gladys María Figueroa Guerra, received serious injuries resulting in her death; (2) in finding that the locomotive was going at great speed; and (3) in holding that the defendants had been guilty of negligence or that such negligence was the proximate cause of the accident.

Those three assignments really involve a single question, to wit, whether the lower court erred in weighing the evidence. Therefore, we will consider them jointly.

A careful study of the whole evidence shows that the errors assigned are nonexistent. As to the first error, it appears from the record that there was introduced docu-

mentary and oral evidence regarding the cause of the death. In the first place, there was the testimony of two witnesses, Catalino Rivera Guilbo and Elena Vázquez Haro, who stated that they saw the locomotive strike the child. In opposition to such testimony there was introduced that of defendant's witnesses, Raúl Morales and Carmen Delia Castro González, both passengers on the train alleged to be involved in the accident. The former, upon being asked about the occurrence, answered: ''That I saw her fall, and when the people shouted: 'Look, a child has been killed,' several persons went out to see what had happened''; and the latter, when asked whether or not the engine had struck the child Gladys Figueroa, answered: ''I don't know whether it did or not.''

Nor do we think that the second error assigned was committed, since there was oral evidence to the effect that the locomotive was going at great speed. It was so stated by three witnesses of the plaintiffs. Although the defendant's own witnesses testified that the train was running only at the rate of 25 kilometers per hour, from the testimony of the engineer it appears that, notwithstanding the fact that he had been warned of the necessity of stopping the engine when the latter was halfway in front of the dwelling house (*ranchón*), the train did not stop until it reached the overseer's house, which is 52 meters distant from said dwelling house, a building 33 meters long, that is, the train stopped at a distance of 69 meters from the place where it was warned to stop. Undoubtedly, this circumstance moved the trial judge to accord more credit to the testimony of the witnesses for the plaintiffs as to the speed of the train.

The lower court gave credence to the witnesses introduced by the plaintiffs in order to prove the excessive speed at which the locomotive was running and the fact that no warning or signal whatsoever was given either before or after passing the place of the accident. Since we have been unable to find anything in the record to warrant us in disturbing that finding or in interfering with the weighing of

the evidence by the lower court, said finding must be respected on appeal. The trial judge before whom the witnesses testified, who had the opportunity, not available to this court, to see them and observe the manner in which they testified, to notice any contradictions, doubts or vacillations on their part, and to gradually form in his mind a conviction as to whether or not there was any right to the relief sought, is the person to whom the law grants the power to weigh the evidence and to judge of the credibility of the witnesses; and it is for this reason that we think that we are bound on appeal not to vary his findings unless it is shown that there was manifest error or that he acted with passion, prejudice, or partiality. *Gay* v. *Vega,* 39 P.R.R. 584; *Acosta* v. *P. R. Ry. Light & P. Co.,* 60 P.R.R. 845; *Méndez* v. *Heirs of Sella,* 62 P.R.R. 327, 332, and the case of *Hernández* v. *Acosta et al.,* decided by this court on November 24, 1944.

The defendant-appellant maintains that *it was not bound to anticipate the presence of children at the place of the accident,* since said place was not a railroad crossing or a public highway nor an urban zone or a densely populated area, and that, therefore, the lower court erred in stating that it rested its decision ''on the fact that the defendant should have anticipated the presence of children at that unfenced place.'' In support of its contention it cites the decisions in *Arreche* v. *P.R. Ry. Light & Power Co.,* 40 P.R.R. 286, and *Imler* v. *Northern Pacific Railway Co.,* 1916–D L.R.A. 702. Although the facts in the *Arreche* case are somewhat analogous to those herein, said case has no connection with the arguments set forth by the appellant in support of the assignment under discussion. In it the necessity of anticipating the presence of children at the place of the accident was neither raised nor discussed at any time. Said case was rather directed against that part of the opinion of the trial judge in which the latter assumed that the tracks having been laid after the dwelling house (*ranchón*) was built, the company had assumed the risk of its conduct. In the *Imler*

case it was held that "the mere fact that the engineer had an unobstructed view of the track for more than a mile does not render the company liable for injury to one hit by the train while walking along the track, if there is nothing to show that the injured person was in fact on the track while the train was approaching him for that distance."

In said case, Imler left the place of his employment at dusk and walked in the direction of his house, which was about a mile and half off. At a certain point on his way, he entered upon the railroad track and continued to walk along the same until he was struck and killed by a train. In our judgment, neither the contents of the opinion nor the facts on which it was based are applicable to the present litigation.

In the instant case, there is involved a child two years and eleven months old, and it was proved that the dwelling house (*ranchón*) lies five feet and four inches from the railroad track; that the engine projected 2 feet and 4 inches on either side of the track, that is, from the front end of the engine to the corner of the house, where the child stood, there was a distance of only 3 feet; that precisely in the room on that corner, the nearest to the track, lived the plaintiffs and the deceased child; that other families with children live in the same building; that in the neighborhood there are other houses where children live; that at that place there · is no fence separating said building from the railroad track; that in order to go to or from the building it is necessary to cross the track, either in front of the building itself or over the grade crossing nearby; and that the engineer and the conductor, and hence the defendant company, were and are well aware of the whole situation. Under these circumstances, should not the defendant have anticipated the pre sence of children at the place of the accident? The plain tiffs so maintain, and, in support of the judgment of the lower court, they cite, among other authorities, 44 American Jurisprudence, pp. 659–61, thus:

"The company is bound to anticipate the presence of persons on the track or right of way at any place where the public in any considerable number has openly, notoriously, constantly, and habitually crossed over or traveled along a portion of the tracks or right of way other than in a highway crossing, with the knowledge and acquiescence of the railroad company. These places occur most often in thickly populated areas such as cities and villages where there is free access to railroad tracks.[1] This rule applies particularly in situations where there is a welldefined pathway along or across the right of way or tracks of a railroad company, which pathway is in constant use by many persons having no connection with the company, and of which use the company knows or is charged with knowing.[2] Acquiescence or consent by the railroad company in such use may be presumed where the company has permitted the public to use its tracks at a point of crossing or as a footpath over a long period of time without let or hindrance.[3] Such a use may be of such long standing that there may arise what amounts to an implied invitation to use the right of way at that point for purposes of travel or crossing, with the attendant responsibilities and liabilities upon the railroad company incident to presence of the public by implied invitation. Under this view, the courts sometimes base their decisions not upon the alteration of status arising from an implied invitation, *but upon the duty owing to one whose presence is to be anticipated,* whether his technical status is that of a trespasser, licensee, or invitee."[4] (Italics ours.)

In making an independent research on the same question, we have found the following comments in 44 American Jurisprudence, p. 645, § 427:

" . . . if a railroad company expressly invites or *tacitly permits* persons to be upon its premises, or in or about its machinery, the company owes to such persons the duty, not only not to injure them when their presence becomes known, but also *to anticipate their presence at the time when or the place where such invitation or permission would probably bring about their presence,* and to take such measures as ordinary prudence would require to prevent injury to

---

[1] *Johnson* v. *Atlantic Coast Line R. Co.,* 59 Fla. 302, 51 So. 851.

[2] *Pomponio* v. *N.Y., N.H. & H.R. Co.,* 66 Conn. 528, 32 L.R.A. 530.

[3] *Thomas* v. *Chicago, M. & St. P.R. Co.,* 103 Iowa 649, 72 N.W. 783, 39 L.R.A. 399.

[4] *St. Louis & S.F.R. Co.* v. *Jones,* 78 Okla. 204, 190 P. 385, 16 A.L.R. 1048.

them if they are in fact present." (Italics ours.) *Moody* v. *St. Louis, I. M. & S. R. Co.*, 89 Ark. 103, 115 S. W. 400.

Notwithstanding the lengthy briefs filed, neither of the parties has mentioned the case of *Ortiz* v. *American Railroad Co.*, 62 P.R.R. 171, although, in our judgment, it covers the question raised herein. In the *Ortiz* case, a minor was struck by a locomotive, at 7:30 p. m., while walking along the railroad track in a direction opposite to that from which the train was approaching. At the place where the accident occurred the track ran in a straight line, and there were no houses adjoining the track. It was also proved that several children used to play some afternoons near the track. A judgment of recovery having been rendered by the lower court, an appeal was taken therefrom and this court, in view of the attendant circumstances, held that the company was not bound to anticipate the presence of children, and said, at page 181:

"The mere fact that some boys used to play in a place more or less distant from the railroad tracks did not impose any duty whatsoever on the employees of the defendant to anticipate that at the moment the train passed by that place there would be boys on the railroad tracks . . . so *they must be obliged to reduce their speed and take extraordinary precautions* only when *there exists a real cause to justify it*. Besides, the fact that some afternoons the boys played in said place is *not so ostensible* as to justify the conclusion of the court *a quo* to the effect that the employees of the defendant *knew* of these games and *therefore were under a duty to take* measures of precaution. *From the evidence it does not appear that the employees of the defendant had knowledge of said games.*" (Italics ours.)

In the case at bar, the children lived near the railroad track and by reason of such proximity used to play on or near the same. They crossed over it when going in or out of the dwelling house (*ranchón*), which plainly was and is a continuous necessity rather than a habit, and the whole situation was well known by the engineer who operated the train. Therefore, based on the decision in *Ortiz* v. *American Rail-*

*road Co., supra,* we find that in the instant case there existed and exists a cause to justify that when the defendant operates its trains at that place it should reduce their speed and take extraordinary precautions, since the situation above described constitutes "a fact so ostensible" as to impose upon defendant's employees the "duty to anticipate the presence of children"; which duty is the more evident when the proof shows that said employees had knowledge of such factual situation. See *Hernández* v. *Acosta et al.*, decided November 24, 1944.

■ The appellant urges that the District Court of Ponce erred in rendering judgment against the defendant on the ground that the child was not a trespasser. A trespasser is an intruder; one who enters upon the land of another without the latter's consent and without any right thereto. From the evidence it appears that the child stood between the track and the dwelling house (*ranchón*), on a strip of land 5 feet and 4 inches wide. Neither of the parties introduced any evidence as to who was the owner or possessor of said strip of land. Was the child on land which belonged to the company or to the Estrella Estate? We can not determine it from the record. Nevertheless, for the purpose of this opinion, we will assume that the land on which the child stood when she was struck by the engine, belonged to the company. Upon that theory, we find that according to Prosser on Torts, the authorities are divided as to whether or not a person so situated is a trespasser in contemplation of law (pp. 616–17):

"In a number of cases, the court has attempted to explain the liability by saying that the defendant's continued toleration of the trespass amounts to permission to make use of the land, so that the plaintiff is not a trespasser but a licensee." (*Smith* v. *Philadelphia & R. R. Co.*, 1922, 274 Pa. 97, 117 A. 786.)

And at page 621 it is said:

"The place where the condition is maintained must be one upon which the possessor knows or should know that such children are likely to trespass. The possessor of land is not required to take precautions when he has no reason to believe that children will come upon his premises." (*Standard Steel Works Co.* v. *Chicago, A. & E. R., Co.,* D. C., Ill. 1939, 29 Fed. Supp. 297.)

We are of the opinion that under the circumstances of this case, the company was bound to anticipate the presence of children and to take due precautions to avoid the accident.

■■ The appellant maintains that the lower court erred in rendering judgment against the defendant and in holding that the plaintiffs were not guilty of contributory negligence and that such negligence was not the proximate cause of the accident. The existence of contributory negligence is a question of fact, which arises from the circumstances peculiar to each case and therefore depends upon the weighing of the evidence by the lower court. The latter gave credit to the plaintiffs and did not consider them guilty of contributory negligence. We find nothing in the record to justify our varying the finding made by the trial court. Besides, even if we conceded that the plaintiffs were guilty of negligence, we would always have to determine which of the negligences was the proximate or immediate cause of the damage done. Granting, then, that the child was placed in a perilous situation by reason of the negligence of her parents, the defendant, who should have anticipated the presence of children at the place of the accident, had the last clear chance to avoid the injury by the exercise of reasonable vigilance, giving timely warning and reducing the speed of the train; which precautions, as shown by the evidence, it failed to take. Restatement of the Law, Torts, Negligence, §§ 479 and 480.

The judgment appealed from should be affirmed.