## STATE v. HUBBARD.

1. **Intoxicating Liquors:** DELIVERY TO INTOXICATED PERSON ON ANOTHER'S "TREAT." Where A. orders intoxicating liquor to be delivered to B., an intoxicated person, for B's sole benefit, and it is so delivered, the title passes directly to B., though the goods are paid for by A., and thus furnishing intoxicating liquor to an intoxicated person is an indictable offense under the statute.

2. ———: SALE TO INTOXICATED PERSON: EVIDENCE. On the trial of such indictment, evidence that the person to whom the liquor was furnished was intoxicated six hours after the sale, did not tend to show that he was intoxicated at the time of the sale, and should have been excluded.

*Appeal from Cerro Gordo District Court.*

THURSDAY, MARCH 22.

THE defendant was convicted of the crime of disposing of intoxicating liquor to one Johnson, an intoxicated person. Judgment having been rendered upon the verdict, he appeals to this court.

*Blythe & Markley,* for appellant.

*Smith McPherson, Attorney-general,* for the State.

ADAMS, J.—I. The evidence shows that a temperance organization, called the Rockwell Temperance League, employed one Andrews to procure evidence against the defendant of his disposing of liquor to an intoxicated person. Andrews, instead of devoting himself to procuring evidence of past offenses, if there were any, proceeded to draw the defendant into a new offense. He appeared upon the scene a stranger, and, as the evidence tends to show, a pretended land buyer. He exhibited money, or created the impression in some way that he was in a condition to buy land and to pay for it down. While looking for a land seller, he met Johnson. In him he conceived the idea that he had found a proper subject to base an

offense upon, if he could first get him intoxicated, and then induce the defendant to sell him liquor while intoxicated. He accordingly proceeded with Johnson to the saloon of one Tell, and drank with him three or four times.    Johnson conceived the idea, to use his own language, that Andrews was a moneyed man, and the man he wanted to strike.    The plans of each were to be accomplished through the other's intoxication.    In their respective enterprizes both manifested considerable persistence.    Having worked Tell's saloon to such extent as they thought expedient, they proceeded, with a further eye to business, to the defendant Hubbard's saloon.    One other man was along to assist, though it does not appear on which side.    It may have been as a general friend and counsellor.    At the defendant's saloon, Andrews in his zeal did not wait for Johnson to treat, as prudence would have seemed to dictate, in order to save a close legal question, but he called for the liquor himself and paid for it.    Whatever liquor Johnson drank at the defendant's saloon he drank on Andrews' treat. The defendant seeks to avail himself of this fact, as showing that the liquor which he disposed of he did not dispose of to Johnson.    It having been set out at Andrews' call and paid for with Andrews' money, he claims that it was disposed of to Andrews, and he asked an instruction to this effect, which was refused.

If this rule is sound, no intoxicated person who has any sympathy for his liquor seller, or any desire to maintain his institution, should ever treat himself except by proxy.    But, in our opinion, the rule is not sound.    Where A. orders goods to be delivered to B., and for B's sole benefit, and they are so delivered, the title, we think, passes directly to B., and that, too, though the goods are paid for by A.    The title would pass by the sale and delivery, and no time would elapse between the extinction of the seller's title, and the commencement of B's title.

II.    A question was raised in regard to the admissibility

of certain evidence introduced to prove that Johnson was in-

2. ——: sale toxicated at the time of the sale in question. The
to intoxica-
ted person: sale appears to have been made about 9 or 10
evidence. o'clock in the forenoon.   As tending to show that

Johnson was intoxicated at the time, the State was allowed to show that he was intoxicated about 4 or 5 o'clock in the afternoon.   Evidence of profound intoxication would, of course, be evidence that an intoxicated condition had existed, at least, for a short time.   The evidence of Johnson's condition at 4 or 5 o'clock in the afternoon was that his tongue was thick, and his remarks were not such as are usually made by men in a normal condition.   At least six hours had elapsed since he was invited to the defendant's counter by Andrews, and be-tween that time and the time he was seen at 4 or 5 o'clock in the afternoon, there was added to the liquor which Johnson drank at Tell's saloon, all the liquor for the sale of which this action was brought.   Evidence that a person after dinner ap-pears to be in a gorged condition, is no evidence that he was in such condition before dinner.   The question is as to whether Johnson was already intoxicated when he drank the defendant's liquor, and not as to whether he was intoxicated by it.   We think that in admitting the evidence the court erred.

Some other questions are presented, but we think that they will not rise upon another trial, and we omit to consider them.

REVERSED.