S. H. CROFT, Appellee, v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

| 134 | 411 |
| 143 | 80 |

**Change of venue:** PUBLIC PREJUDICE.    A motion for change of venue is addressed to the discretion of the trial court and the appellate court will not interfere unless an abuse of its discretion is made to appear.    In the instant case the overruling of a motion based on the prejudice of the community is not disturbed.

**Same:** REVIEW OF APPLICATION FOR CHANGE OF VENUE. The Appellate Court in reviewing an application for change of venue based on prejudice of the community will not consider the record of the examination of the jury impanelled in the case.

**Jurors:** QUALIFICATION. A challenge to a juror should be overruled where it appears from his examination that he has not formed or expressed an opinion on the merits of the case, or, does not show such a state of mind as will preclude him from rendering a just verdict. From the examination in the instant case it is held that disqualification is not shown.

**Loss of services:** VALUE: EVIDENCE. In an action by the husband for loss of his wife's services, a witness, who, as the head of a family, has for several years been in a similar station in life with that occupied by plaintiff, may testify to the value of services similar to those rendered plaintiff by his wife, basing his judgment on his experience and observation, even though such damages may not be the subject of expert testimony.

**Admission of evidence:** PREJUDICE. Prejudice will not be presumed from the admission of incompetent evidence which is stricken on motion, though without comment by the court, when there is other competent evidence on the subject which is not denied. If comment of the court upon the ruling is necessary counsel should request it.

**Evidence:** LIFE TABLES: EXPECTANCY OF FEMALE. Where a life table is introduced for the purpose of showing expectancy at certain ages, with no reference therein to sex, it is competent evidence on the expectancy of a female.

**Same:** INSTRUCTION. An instruction which authorizes the consideration of a life table, in connection with other proven facts and circumstances, is not objectionable as arbitrarily basing the expectancy on such table.

**Same.** Where no direct attempt is made to show the life expectancy of the husband, sueing for loss of services of the wife, and the record discloses that there is not considerable disparity between their ages, error can not be predicated on an instruction which makes no reference to the expectancy of the husband.

**Railroads:** NEGLIGENCE: ASSUMPTION OF RISK: EVIDENCE: INSTRUCTION. In an action by the husband for injuries to his wife while assisting him in the performance of his duties in defendant's railway station, the evidence is held to show a deteriorating condition of the track at the place of injury from the time she commenced her service in the station; a negligent

operation of a train at that point resulting in its derailment and the destruction of a portion of the station, thus causing the injury; and that she did not assume the risk of defendant's affirmative negligence in either respect.

**Same.** A railway company, knowing that the wife of its agent is assisting him in his duties in the station is bound to expect her presence, and must exercise reasonable care in the operation of its trains to protect her from injury while so engaged.

**Same:** CARE AS TO CHILDREN. Where a railway company gives over a portion of its station to the agent for residence purposes, knowing that he is the head of a family, it is bound to know that he has one or more children and is held to the same care with respect thereto as though it had actual knowledge that the family included children.

**Same:** RECOVERY FOR INJURY TO CHILD. A parent, who, with knowledge of the owner is rightfully in a building presenting in itself no inherent danger may recover for an injury to his child, with him on the premises, caused by the active negligence of the owner from without whereby the building is demolished.

*Appeal from Muscatine District Court.*— HON. D. V. JACK-SON, Judge.

WEDNESDAY, NOVEMBER 14, 1906.

REHEARING DENIED, MONDAY, MAY 20, 1907.

ACTION to recover damages growing out of a railway accident. From a judgment in favor of plaintiff the defendant appeals.— *Affirmed.*

*Carroll Wright, J. L. Parrish,* and *Carskaddan, Burk & Pepper,* for appellant.

*E. M. Warner* and *Richman & Richman,* for appellee.

BISHOP, J.— The accident out of which this action arose is the same as that upon which the case of *Laura M. Croft v. Railway,* 132 Iowa, 687, was based. The general circumstances of the accident are related in the opinion in that case, and we need not here repeat. This plaintiff was the

station agent of the defendant at Buffalo, and the husband of said Laura M. Croft. The facts of Mrs. Croft's injury will be remembered, and the additional fact may now be stated that the minor child of the Crofts, a girl about six years of age, who had gone into the office of the depot with her mother, was instantly killed in the accident. This action is brought by plaintiff to recover the expense incident to the funeral and burial of his child and for the loss of her services during the period of minority. In a second count he also seeks to recover the expense incurred by him in caring for his injured wife and his own time and service in attending upon her, the expense of like character which is certain for the future, and the loss of her service, past and future. The answer to each count was a general denial.

I. After answer, the defendant presented a motion for change of venue, and error is assigned on the action of the court overruling the same. The motion was based on prejudice of the citizens of the county, and was

1. CHANGE OF VENUE: public prejudice.

supported by the affidavit of one of the attorneys for defendant, being the attorney who tried the case of Laura M. Croft against the defendant in said county, and also the joint affidavit of seven citizens of said county, who aver that a strong feeling of hostility against the defendant has existed in said county for years; further that, in view of the wide notoriety which the Croft cases have attained in said county, and the comment affiants had heard and read thereon, they do not believe the defendant can have a fair trial in said county. This showing was met by the counter affidavits of two of the attorneys for plaintiff, supplemented by the joint affidavit of fourteen citizens of the county, who aver that no prejudice exists in the county against the defendant such as would prevent a fair trial. As well understood, a motion for change of venue appeals to the discretionary power of the trial court, and this court will not interfere unless a case of abuse of discretion is made to appear. We cannot say that a case of abuse

is here presented. The accident occurred in Scott county, and the actions were brought in Muscatine county. It is inevitable that an accident of the character of the one in question, and attended by the results such as are conceded to have followed, will provoke discussion and comment pro and con and both in print and by word of mouth. But it does not follow therefrom and of necessity that prejudice will so far permeate the citizenship of the county that, pursuing the usual methods, a fair jury cannot be made up to try the case. Certainly the belief of a few citizens who have read or heard comment unfavorable to the defendant ought not to be accepted as all-sufficient proof of the feeling prevailing in the county at large. It is true that in the Laura M. Crofts case two trials had already been had, and verdicts in large amounts returned, the first of which was set aside as excessive, and the second cut down on consent of plaintiff by the court on entering judgment. But this does not go far in proof of the fact that the citizenship of the county is so far dominated and controlled by prejudice that defendant cannot have a fair trial before a jury of the county. It must be assumed that the jurors who sat upon the former trials were in all respects qualified, and that the verdicts were predicated solely upon the view afforded by the respective trials; that the verdicts were excessive cannot be attributed, therefore, to popular prejudice from the influence of which, if it existed, the jurors were withdrawn.

Counsel for appellant have brought up the record of the examination of the various veniremen taken upon the impanelment of the jury in the present case, and we are asked to consider the same as tending to show popular prejudice in the county. Manifestly we cannot do this. The case is before us for the correction of errors, and, in considering the correctness of any particular ruling, we must go to the situation as presented to the trial court, and to that alone.

2. SAME: review of application for change of venue.

II. Two of the veniremen called into the box were

challenged by defendant for cause after examination, and the challenges were overruled. It is claimed that here was error.

3. JURORS: quali-
fication.

One of the men, Thomas McSwiggin, answered that he had read about the accident, the case, and the verdict on the other trials; that he had also talked with his neighbors on the subject. He also said that he then formed an opinion which would require evidence to remove. He said, however, that his opinion would have no weight if he was selected as a juror; that he would not take it with him into the jury box, and he would not be affected by it in reaching a verdict. The other man, Louis Duge, answered that, at the time of the accident, he formed an opinion from what he heard as to who was to blame therefor. " I guess I could serve as a juror, and return a verdict without reference to anything that I heard." On cross-examination he answered: " I have slightly an opinion now. It would require some evidence to remove it." Further he said he " guesses " he could form a verdict from the evidence without giving any weight to the account of the accident printed immediately after the occurrence thereof. In answer to a question by the court he replied that at the present moment he had no definite opinion as to which side of the pending controversy had the right of it. In our view no error is disclosed. As far as here to be considered a venireman is subject to challenge only when " it appears he has formed or expressed an unqualified opinion on the merits of the controversy, or shows such a state of mind as will preclude him from rendering a just verdict." In the present case the answers of McSwiggin did not disclose an unqualified opinion, and this is also true as to Duge. Indeed, counsel for appellant do not contend otherwise. If subject to challenge, therefore, it was because a state of mind was disclosed such as in fairness unfitted them for service on the jury. We are not willing to agree with counsel that this conclusion is dictated by the examination of which the record makes disclosure. In this day, intelligence is demanded in

the jury box, and intelligent men read the newspapers, and discuss current topics with their neighbors. It would be strange, indeed, if opinions, superficial or qualified in character, should not be formed, based upon information thus acquired. And it will not do to lay it down as a rule that intelligent men thus conditioned are unfitted for jury service.

Moreover, every intelligent observer knows that, in the exceptional cases, the real disqualification can be charged more certainly to moral disregard, bottomed on interest, near or remote, or inherent personal prejudice, than to the formation of a merely superficial opinion. Stated in another way, an honest man, especially when reminded of his duty, may be expected to put aside opinion based on rumor or second-hand report, and do justice as the real facts of the case presented to him on the trial seem to demand. A dishonest man, and it is not necessary that the expression should be taken in an offensive sense, though cautioned, may not be expected to put aside his hearsay opinion, because, when formed, such opinion will in general accord — consciously or unconsciously — with personal self-interest or personal prejudice. Men of the class first above referred to should never be subject to challenge for cause unless from their own mouths they testify to their disqualification. When an examination discloses that in character a venireman belongs to the class last above referred to he should be dismissed at once. And the court is not restricted to the mere form of words in which the answers of the venireman are couched. His manner and appearance may be taken into consideration. Here, too, much must be left to the discretion of the trial court, and, as in other matters resting in discretion, its action will not be disturbed except a clear case of abuse is made to appear. Our views thus expressed find support in principle in the following authorities: *Anson v. Dwight,* 18 Iowa, 241; *Sprague v. Atlee,* 81 Iowa, 1; *In re Goldthorp's Estate,* 115 Iowa, 430.

We are united in the opinion that the respective examinations of the veniremen in question did not show disqualification calling for their dismissal. The answers of McSwiggin were simple and straightforward, and brought him clearly within the rule of qualification. This may also be said of Duge. It is not material that, in giving his answers, the latter used the qualifying word " guess "— a word technically implying doubt. It is manifest from his answers as a whole that the form of expression used was merely a colloquialism. It was not intended to be understood in its literal or technical sense.

III. One Boos, a witness called by plaintiff, made answer that he was a married man and for several years had been the head of a family. From his answers it also appeared that his station in life was quite similar to that occupied by plaintiff. He was then given the case of a wife 34 years of age, healthy and able to do the work of her family, consisting of her husband and two children, the husband residing at Buffalo, Iowa, and earning $55 per month and house rent, and therefrom he was asked to state what would be the value per year of the services of such a wife to her husband. To this the defendant objected for the reason that the witness had not shown himself competent to answer; also that the subject was not one for expert testimony. The objection was overruled. On cross-examination the witness stated that his answer as to value was based on observation; that he had not made a special study of the subject. And further: " It is my opinion, based on what I consider a wife's services worth, provided I was in his position." Thereupon defendant moved to strike out the testimony of the witness in chief for the reasons stated in the objections, and for the further reason that it had now been made to appear that his answer as to value was merely the expression of an opinion. And this motion was overruled. Counsel for appellant strenuously contend that herein was reversible

4. Loss of services: value: evidence.

error. We are not disposed to concur in this view. It may be conceded that the extent of the damage sustained by plaintiff by reason of the loss of his wife's services was not a subject for expert testimony. There was no question of science or skill involved in the inquiry. But it is manifest that the value of the services of a wife to her husband can have no market value. This, of course, does not defeat a recovery and hence it is that if proof on the subject be attempted it must be through the evidence of witnesses possessing the qualifications of observation and experience. In the very nature of things there could be no other basis of qualification. And, *ex necessitate,* the evidence of a witness thus qualified could be no more than an opinion, or rather a conclusion drawn from his observation and experience. As said in *Haight v. Kimbark,* 51 Iowa, 13, " statements of value are always more or less matters of opinion except in questions concerning market value. This is one of the established exceptions to the rule prohibiting witnesses from giving opinions. The value of property cannot be satisfactorily proved in any other way." For cases presenting varying states of fact to which the exception has been applied, see *Sater v. Railway,* 1 Iowa, 386; *Dalzell v. City,* 12 Iowa, 437; *Lanning v. Railway,* 68 Iowa, 502; *Wyman v. Railway,* 13 Metc. (Mass.) 310; *Barnum v. Bridges,* 81 Cal. 604 (22 Pac. 924). See also, 12 Am. & Eng. Ency. 475. It may be, as contended for by counsel for appellant, that the jurors in the box were as well able to determine the question of value as was the witness. But this must be upon the presumption that all were married men in comparatively the same walk of life, and possessed of observation and experience. Or, we must presume that the services of all wives are not only uniform in value, but that such value is matter of common knowledge. We have nothing before us upon which to base any such presumption.

IV.   One Clark, a resident of Buffalo, and a witness for plaintiff, was permitted to testify over the objection of

defendant, that a short time before the accident, and while
on a train with the superintendent of the rail-

5. ADMISSION OF
EVIDENCE:
prejudice.

way division, he had told such superintendent
that Mr. Croft expected to leave the station;
that upon being asked why, he had replied that Croft was
complaining that the work was too hard, and the salary too
small.   Further, that he called the attention of the super-
intendent to the extent of the responsibility resting upon
Croft, and that the company was not doing right by him;
that to this the superintendent replied that he had never
investigated, and had not thought about that.   Being asked
what was said about Mrs. Croft helping her husband in the
depot office, he said:   " I told him that without the assist-
ance of Mrs. Croft he could not run that office at all and do
it rightly."   At the close of the examination the testimony
thus received was stricken out on motion of the defendant,
and this was in the presence and hearing of the jury.   The
contention for error seems to be two-fold:   that the evidence
was of such prejudicial character that the error in its ad-
mission was not cured by the ruling on the motion to strike;
and that, in ruling, the court sustained the motion without
comment.   We say generally that error in the admission of
evidence is cured by subsequently striking it out.   *State v.
Spurbeck,* 44 Iowa, 667; *Rea v. Scully,* 76 Iowa, 343.   Con-
ceding that the rule is not to be invariably applied, the situa-
tion here disclosed does not present grounds for an exception.
No serious prejudice could have resulted from the jury being
told by the witness that he had informed the superintendent
that Croft was contemplating leaving the employ of the com-
pany.   And as to the reference to Mrs. Croft, it was pre-
sumably the intention to get before the jury the fact of
knowledge on the part of the superintendent that she was ac-
customed to assist her husband in his onerous duties.   The
other evidence in the case for plaintiff made it clear that the
superintendent did know of the custom of Mrs. Croft, and
of this there was no attempt at denial.   If comment on the

ruling was necessary counsel for defendant should have requested it. This they did not do either at the time or later.

V.   Complaint is made of several of the instructions given by the court in charging the jury, which instructions had bearing upon the relation existing as of the time of the accident between the wife of plaintiff and the defendant company.   This subject was quite fully considered in our opinion in the *Laura M. Croft* case, to which we have made reference, and being satisfied with what is there said upon the subject in general, we have no occasion for further discussion in this opinion.

VI.   Experience tables, showing the expectancy of human life, were introduced in evidence by plaintiff, over the objection of defendant, showing the expectancy of Mrs.

6. EVIDENCE: life tables: expectancy of female.

Croft to be about thirty years from the date of her accident.   In the thirteenth paragraph of the charge the jury was told that if plaintiff was found entitled to recover he should be allowed damages for loss of services " for such time in the future as it is reasonably certain he will sustain in view of the nature of her injuries, her age, her reasonable expectancy of life as shown by the life tables, her health, habits of life, and all other facts and circumstances in evidence bearing upon the question." It is said that this instruction was erroneous for three reasons:   (1) The life tables were not competent, as they do not purport to furnish the expectancy of life of a female; (2) the instruction arbitrarily fixes the expectancy of the life of the wife by the life tables; (3) the measure of recovery is made to depend solely on the expectancy of the wife, no heed being given in the instruction to the life expectancy of the husband.   The record before us contains no more than a statement that the life tables were introduced showing the expectancy of life at certain ages.   One objection thereto was that the tables did not tend to give the expectancy of a female.   It is now said in argument that the tables did not purport to give such expectancy.   We do

not take judicial notice of the statements contained in life tables, and in the state of the record before us we must assume that the trial court, after examining the tables, correctly held that they were admissible as bearing upon the expectancy of a female.    Should we infer, however, that the tables were general in the sense that they made no reference to sex, we should still be disposed to hold that they were admissible.    Counsel present no reason for making any distinction as to longevity as between the sexes, and the barren record before us does not warrant a holding that there is any.

It becomes apparent at once on reading the instruction that the second contention for error is without foundation. The life tables are no more than referred to in the instruction as one among other facts and circumstances in evidence bearing upon the question of expectancy.    Conceding evidentiary value in any degree to the tables this was certainly proper.    The case is unlike *Trott v. Railway,* 115 Iowa, 80, and other like cases cited and relied upon by appellant, in that the error there declared for arose upon an instruction, making the life table the sole test of expectancy.

7. SAME: instruction.

As no attempt was made by direct evidence to show the age or expectancy of life of plaintiff, the third contention for error might under other circumstances present a question of more serious import.    Thus, it is probable that in a case, as supposed by counsel, of an aged husband and a youthful wife the expectancy of the husband should be taken into account in estimating his damages.    But no such effect can be given here to reverse the judgment.    In the first place, the question seems to be raised in this court for the first time.    But aside from this, there is sufficient in the record to indicate that plaintiff was a man in middle life, and hence that there was no considerable disparity between his age and that of his wife.    At least, the disparity was not great enough to suggest to defendant's counsel the propriety of an instruction on the subject, as it did not occur

8. SAME.

to the court that such an instruction was necessary. Moreover, the matter in hand had relation solely to the amount of damages, if any,·to be allowed.    And as it is not any part of the contention of appellant for reversal that the verdict was excessive — the situation in that respect being tantamount to a confession that plaintiff is entitled to the full amount allowed, if entitled to recover at all — we cannot think the instruction carried prejudice.

VII.    In the seventh instruction given the jury was told in substance that if plaintiff's wife was in the habit of going into the depot office to assist her husband, and this was known to the superintendent and assented to,

9. RAILROADS: negligence: assumption of risk: evidence: instructions.

or, at least, that no objection was made thereto, then the position of Mrs. Croft would be that of a licensee; that as to her, as such licensee, defendant was under no obligation to change the condition of its track or to change the ordinary and customary manner of operating its trains, but it would owe her the duty of ordinary care, etc.    In the tenth instruction the matters of negligence which it was incumbent on plaintiff to prove were stated to be the defective condition of the track as alleged, and the attempt to run a heavy train thereover at a high and dangerous rate of speed as alleged.    The eleventh instruction followed, and we set it out:    " Moreover if you find from the evidence that plaintiff's wife sustained to the defendant no higher relation as before explained than that of a licensee it must appear if the injuries complained of were the result of the condition of defendant's roadbed, or defendant's manner of operating its trains over said roadbed, that there had been a change in the condition of said roadbed or in the manner of operating trains thereover after plaintiff's wife commenced to use the ticket office, which change as to her constituted negligence."

Counsel for appellant point out these instructions as the law of the case, and they insist that inasmuch as there was no evidence showing any change whatever in the condition of

the roadbed or in the manner of operating trains after Mrs. Croft began work in the depot office, a verdict found contrary to such instructions should have been set aside. It will be observed upon comparison that the seventh instruction was substantially in the form of the fourth instruction given in the case of Mrs. Croft against the defendant, and in the third paragraph of our opinion in that case we discussed at some length the legal correctness thereof constructively and from the view point of its applicability to the general situation as disclosed by the record. We need not go over the subject again at this time. The correctness in all respects of the tenth instruction is nowhere doubted, and it could not well be.

It is upon the eleventh instruction that the argument of counsel is principally based. The thought of the instruction, manifest upon reading, is that Mrs. Croft must be held to have assumed the risk of the track conditions existing at the time of her entrance upon the premises, and of the ordinary and general manner of train operation by defendant thereover. And if no change took place in either of such respects constituting negligence as to her there could be no recovery by plaintiff. Confining ourselves to the line of the argument as made, we have the somewhat narrow question whether the evidence in the case warranted a finding of negligence as to plaintiff arising either out of a change in track condition or in the manner of train operation? It may be stated at the outset that there was evidence tending to show a defective track condition at the initial point of the accident, and there was evidence tending to show that the train in question was being run and operated at a high and dangerous rate of speed, in view of such defective track conditoon. And, further, the conclusion was warranted that the accident resulted proximately from a combination of those two causes. It is true that no change in the track condition was shown to have taken place as the result of a deliberate purpose directed to that end during the period — nearly a year — of Mrs.

Croft's occupancy of the depot.    Nor was it necessary to plaintiff's case that there should be proof of a change as by design.    If change for the worse there was, and the character and extent thereof was such as to have an effect on train operations, it was enough.    Did the situation as presented by the evidence make disclosure of sufficient grounds upon which to plant a finding that a change had in fact taken place ?    To begin with, it cannot be presumed that the condition as of the day of the accident was the condition as of the corresponding day of the year previous.    As a general rule presumptions do not relate backward.    *State v. Dexter,* 115 Iowa, 678; *State v. Hubbard,* 60 Iowa, 466; *Sigler v. Murphy,* 107 Iowa, 128; 16 Cyc. 1052.

Of course, a case is made for a qualified exception to the general rule where the condition presented is such that it could not have existed save as the result of the previous operation of one or more active causes upon a passive object. Thus, as said in the *Hubbard* case, evidence of profound intoxication would, of course, be evidence that an intoxicated condition had existed, at least, for a short time."    So, in the case of a piece of railroad track where an inspection discloses that the ties in considerable number are so rotten that the spikes have but little, if any, force to hold the rails in place, etc., quite naturally the presumption should be indulged that such condition did not come about on the instant. As applied to all such cases, the qualification attached to the exception to the general rule is as to time.    Standing alone, the presumption cannot be made to relate back to any particular point of time.    To that end the aid of extrinsic evidence is required.    Now, in the case before us, the evidence tended to show that at the time of the accident the track at and about the place where the derailment of the train took place was " rather low, and, being soft weather, it was pretty wet and muddy there " that the ties were in part of soft and in part of hard wood, and many of them " punky," " shaky," and rotten, so much so that spikes driven into them

would not hold; that the space between the ties was only partially filled with ballast material. As universally known, it is a fact in nature that a condition of rottenness in wood is the result of gradual, progressive decay. And the process goes on more rapidly in soft than in hard wood, particularly where the piece in question is partially buried in earth — frequently wet — and the remainder exposed to the atmosphere. Having this fact in mind, and considering in connection therewith the further fact that many trains were being operated daily over defendant's line of road, the natural tendency of which would be not only to crush the ties as yielding to the process of decay they grew weaker, but to loosen the spikes by which the rails were secured, we think a finding for change in the track condition was not only warranted, but altogether irresistible.

So, too, we think there was ample grounds on which to plant a finding of a change in the manner of train operation. It is true, as contended for by counsel for appellant, that, on the trial of this case, no witness assumed to speak directly as to the rate of speed at which the train was running. But the jury had before it the facts of the accident, from which it appeared that the train was a lengthy and heavy one drawn by two engines, and that with one of the engines and all of the cars, save two or three, off the track, it ran about seven hundred feet before being brought to a standstill. Therefrom, and in view of the track condition, we think a finding of a high and dangerous rate of speed was warranted.

Now, general observation teaches that men do not ordinarily act in a reckless manner, or needlessly rush into situations fraught with danger to life and property. Due care is the rule, and a want of it the exception. The rule needs no more than the presumption for its support, while, to take a given case out of the rule, the grounds for exception must be established by evidence. This is true on authority as well as on reason. 1 Thompson on Negligence, section 190. Hence it is we sometimes say that negligence will never be

presumed from the mere fact of an accident. *Kuhns v. Railway,* 70 Iowa, 561; *O'Connor v. Railway,* 83 Iowa, 105; *Haden v. Railway,* 99 Iowa, 735. And no one will seriously contend that it can be established as by presumption that a prior course of conduct, proper within itself, was dominated by active negligence simply on proof that a subsequent act, like in character, was negligently performed. Thus, proof that on one occasion a locomotive engineer ran his train at a high rate of speed over a certain piece of defective track — and hence carelessly — does not of itself even tend to prove that he had acted similarly on one or more of his previous trips. And it would be illogical in the extreme to indulge in the presumption from the one careless act that other engineers running over the same track had been habitually given to like carelessness. So, in this case, we think the jury might well have presumed that the observance of due care, having in view the condition of the track, was the rule; that the running of this particular train over such track at a high rate of speed was so far out of the general course as to constitute a change in the manner of operation. That the jury might properly find, therefore, that there was negligence as to Mrs. Croft seems hardly open to debate. Whether it was strictly accurate to class her as a licensee, it being found that she was in the office by permission, express or implied, we need not be at pains to determine.

It is certain that the rightfulness of her presence being established by such finding, she cannot be held to have assumed any risk other than such as might arise out of ordinary train operation. She was not called upon

10. SAME.

to expect injury resulting from an act of affirmative negligence. To paraphrase a maxim of quite general application, she had the right to act upon the presumption that the defendant would neither unexpectedly do a thing wholly unusual, or unexpectedly do a usual thing in an unusual manner. Under such conditions, the defendant was bound to expect her presence, and it was its duty to exercise

reasonable and ordinary care in the operation and conduct of its trains to protect her from injury, and a failure to do so would be negligence as to her. *Watson v. Railway,* 66 Iowa, 164; *Thomas v. Railway,* 103 Iowa, 649; *Carver v. Railway,* 120 Iowa, 346; *Nichols v. Railway,* 83 Va. 99 (5 S. E. 171, 5 Am. St. Rep. 257); *Pomponio v. Railway,* 66 Conn. 528 (34 Atl. 491, 32 L. R. A. 530, 50 Am. St. Rep. 124); 1 Thompson on Negligence, section 968.

VIII. In the ninth instruction the jury was told in substance that if they found from the evidence that it was necessary to the well-being of plaintiff's child that she be in the company of her mother when the latter was in the ticket office at work, and further that the presence of said child as a member of plaintiff's family, residing in the depot building, was known to defendant when it gave consent or failed to object to the presence and service of the mother in the ticket office, then the duty owing by defendant to the mother would be the measure of its duty to the child. Appellant complains of this as error. It is pointed out to begin with that the record does not disclose that defendant had any knowledge whatever as to the facts respecting plaintiff's family, as to the number of his children, if any, or their age. There is then the statement of the legal point that the age of plaintiff's child, and the necessity for its safety, could not have anything to do in determining the degree of care due from defendant to such child. It is true, there is no direct evidence of knowledge on the part of defendant respecting the presence of the child in the depot building. But it had given over a portion of the building to plaintiff for residence purposes, and this with knowledge that he was the head of a family. In this situation we think it was bound to expect that the family included one or more children, and, this being true, the same duty arose as though actual knowledge had been brought home to it.

Counsel for neither party has seen fit to present us with

11. SAME: care as to children.

brief or argument addressed to the legal point raised.   We shall dispose of it, therefore, by simply saying that no authority has come under our observation for holding that where a parent enters by right into a building — presenting in itself no inherent danger — taking with him a child of tender years, the latter can have no right of recovery as against the owner of the building for an injury caused by the active negligence of such owner proceeding from without and whereby the building was demolished.   On the contrary, there are cases holding that even a trespasser may recover for an injury thus brought about.   And, clearly, it would be so if the owner knew or had good reason to believe that such trespasser was on the premises.   We conclude that there was no error in the instruction of which defendant can complain.   Other questions of error argued are either disposed of by what has already been said, or are without merit.

12. SAME: recovery for injury to child.

The conclusion follows that the judgment must be, and it is, *affirmed.*