IN RE ESTATE OF HENRY IWERS.

EMMA TREIMER et al., Contestants, Appellants, v. MARGARET VOSS et al., Proponents, Appellees.

No. 44012.

JUNE 21, 1938.

REHEARING DENIED SEPTEMBER 30, 1938.

J. R. McManus, J. C. France, W. A. Hamilton, R. W. Cockshoot, Ray A. Potter, Carl H. Mather, and B. J. Maxwell, for appellants.

G. P. Linville, M. C. Hamiel, Chamberlin & Chamberlin, John A. Hornby, and George R. Fiala, for appellees.

STIGER, C. J.—Henry Iwers, the testator, was a son of Hans and Caroline Iwers. Hans Iwers came to this country from Germany as a' youth and settled in Cedar County where he engaged in the business of farming. The family consisted of Mr. and Mrs. Iwers, and their sons, William, John, and Henry Iwers. None of the brothers married. They all lived together and accumulated 880 acres of land, residence properties, and a large amount of personal property. Through the death of his brothers,

Henry became the owner of all the property accumulated by the family which was valued at his death at $375,000. On June 6, 1935, Mr. Iwers went to the office of his attorney, D. H. Snoke, where the will in question was drawn. It purports to be signed by Henry Iwers and witnessed by Mr. Snoke and Miss Geerts, stenographer for Mr. Snoke. The will gave all of the testator's property to Louis and Mary Voss. Mary Voss was a cousin of the testator.

Henry Iwers lived alone after the death of his brothers until January, 1936, when the proponents, Louis and Mary Voss, who were then living on one of the Iwers' farms, moved into the home of Henry Iwers and lived with him until his death five months later.

The objections to the probate of the will relied on by contestants are that the instrument was not signed and executed by the decedent and was not witnessed and signed by the persons whose names appear thereon as witnesses in the manner required by the laws of the State of Iowa.

The jury found for the proponents and that the will offered for probate was the valid will of Henry Iwers.

At the time of the trial, Miss Geerts was the only surviving witness to the will. She testified to conversations occurring between the testator and Mr. Snoke and further testified that Iwers signed the will in the presence of the witnesses and that they, at his request, signed as witnesses in his presence. The contestants do not question the signature of Miss Geerts.

Two handwriting experts, Mr. Faxon and Mr. Scovill, witnesses for contestants, classified the signature of Mr. Iwers on the will as a traced forgery. Four lay witnesses for the contestants testified that the signature of D. H. Snoke appearing on the will was a simulation. Three handwriting experts, Mr. Gesell, Mr. Courtney, and Mr. Steen, and several lay witnesses testified the signatures of Iwers and Snoke appearing on the will were genuine.

I. The first assignment of error relied on by appellants for reversal is that the surviving witness to the will of the decedent, Mary C. Geerts, was incompetent to testify concerning the making and execution of the purported will under Code section 11257, known as the dead man's statute, and that said will should not have been admitted in evidence because its admission was based upon the evidence of an incompetent witness.

Miss Geerts was, at the time of the trial the only surviving witness to the will.

In objecting to the competency of the witness, counsel for contestants stated:

"The proponents base their claim of right in this matter upon the testimony of this witness. My thought on that is this: 'It now appears that Snoke (the other witness to the will) is dead, therefore, to sustain the burden upon the proponents in this case they must necessarily depend upon the testimony of this witness, and therefore any rights they have in this matter will depend upon the testimony of this witness, and she is incompetent by reason of the dead man's statute' ''.

The material portion of section 11257 is as follows:

"11257. Transaction with person since deceased. No party to any action or proceeding, nor any person interested in the event thereof, nor any person from, through, or under whom any *such party* or interested person *derives any interest or title by assignment or otherwise,* * * * shall be examined as a witness in regard to any personal transaction or communication between such witness and a person at the commencement of such examination deceased, * * * against the * * * heir at law * * * of such deceased person * * *.'' (Italics supplied.)

The contention of contestants is that Mary C. Geerts testified, over objection, to the making and execution of the will, and that proponents base their claim of right to the admission of the instrument to probate solely upon her testimony, and they allege that because the testimony of Miss Geerts was necessary to establish the due execution of the will, under which proponents claim title to the property of decedent, it follows that Miss Geerts was the person from whom proponents derived an interest or title by assignment or otherwise. Contestants especially claim that while proponents did not derive their interest in the subject matter of the action by assignment from Miss Geerts they did derive title from Miss Geerts "otherwise", because she was indispensable to the establishment of the due execution of the will and therefore proponents derived title from her, not by assignment, but "otherwise". In support of their position, contestants rely on the following loose phraseology contained in the case of McClanahan v. McClanahan, 129 Iowa 411,

105 N. W. 833, in which case the court purports to define the word *otherwise* found in Code section 11257 as follows (page 413 of 129 Iowa, page 834 of 105 N. W.):

"It is not necessary that the interest should be derived by transfer or assignment. It may be 'otherwise,' and, as used, that word is one of broad significance. It means that, if the right asserted by a claimant depends for its existence and validity upon a transaction between the deceased and a third person, the evidence of such third person shall not be allowed to prove the transaction."

■ The above language in the McClanahan case is entirely too broad and if the definition of the word "otherwise" is correct, it would prevent to a substantial degree the proof of due execution of wills by the witnesses thereto, for in the great majority of cases, the right asserted by proponents of and beneficiaries under a will depends for its existence upon the transaction between the deceased and the witness or witnesses to his will. The construction found in the McClanahan case is manifestly not in harmony with the express provisions of the statute which provide that in order to render a witness incompetent, the party to the action must *derive* his interest or title in the subject matter of the action from the witness. Manifestly the proponents did not derive their interest in the subject matter of the action from Miss Geerts or through any transaction with her. Whatever interest proponents have will be derived from the last will and testament of decedent.

We approve and affirm the construction given Code section 11257 and especially that portion that is under special consideration here in the case of Stiles v. Breed, 151 Iowa 86, at page 97, 130 N. W. 376, at page 380, in which the court states:

" 'From, through or under' has reference to the origin or devolution of property, and, unless some title to or interest therein has been derived by 'assignment or otherwise' from the party adverse to the estate, the section has no application. By 'otherwise' is meant in another manner or way, as by devise or descent. Contrary to what was intimated in McClanahan v. McClanahan, 129 Iowa 411, 105 N. W. 833, by express provision of the statute, the title or interest must have been derived 'from, through or under' the witness, in order to render him incompetent."

394

Further expressing its disapproval of the language found in the case of McClanahan v. McClanahan, supra, the court, in the Stiles case, states:

"In McClanahan v. McClanahan, 129 Iowa 411, 105 N. W. 833, the witness held to have been incompetent was the person through whom the trust fund was acquired, and therefore not in point, though dicta may be found in the opinion contrary to the conclusion here reached. We are of opinion that the evidence of Thompson was admissible."

The conditions that make the statutory prohibition applicable are not present in this case and the trial court was right in ruling that Miss Geerts was a competent witness. See Stutzman v. Crain, 185 Iowa 514, 170 N. W. 806.

II. Another error alleged is that the court erred in failing to instruct the jury upon the issue as to whether or not the purported will was duly and legally executed and witnessed in the manner required by law, which was one of the issues made by the pleadings, and which issue was separate and independent from the issue as to the genuineness of the signatures of the testator and the witness Snoke; that the proponents had the burden of proving that the instrument was executed in the manner required by law and that the court further erred in giving to the jury upon its own motion the last paragraph of instruction No. 3, which, in effect, withdrew the issue of the formal execution of the will from the jury.

Contestants objected to the probate of the will of decedent upon the following ground:

"That said paper purporting to be said Last Will and Testament of Henry Iwers, deceased, was not signed and executed by said decedent or by any other person in his presence and by his express direction writing his name thereto in the manner required by the laws of the State of Iowa, and was not witnessed and signed by the persons whose names appear in said paper as witnesses thereto in the manner required by the laws of the State of Iowa."

It is the contention of the proponents that the only issue presented to the court in the trial of the case was whether the signatures of Iwers, the testator, and Snoke, one of the witnesses to the will, were genuine and that the action will not be reviewed

on appeal on a theory different from that pursued in the trial below.

After the proponents had made out a prima facie case by the testimony of Miss Geerts, surviving witness to the will, the contestants offered the evidence of two experts and laymen who testified that the signatures of Iwers and Snoke were forgeries. No other evidence was offered by contestants relative to the execution of the will. Proponents, in their rebuttal testimony, introduced the evidence of expert and lay witnesses who testified that the signatures were genuine.

Contestants requested the court to give a complete set of thirteen instructions all of which were given verbatim by the court. It may be said, for the purpose of this appeal, that all of the instructions given by the court were requested by contestants with the exception that the trial court added a paragraph to instruction No. 3, which they claim withdrew from the jury the issue of the formal execution of the will, and with the further exception of instruction No. 8, which referred only to Exhibit "AT" which was immaterial to any issue in the case.

In the statement of issues to the jury, the instruction states that the ground of the contest is that the will was not signed and executed by Henry Iwers and was not witnessed and signed by the persons whose names appear on said paper, as witnesses thereto in the manner required by the laws of the State of Iowa.

Because of the importance of instruction No. 3 in the determination of the issue presented by this assignment of error, we set it out in the opinion at length.

"INSTRUCTION No. 3.

"As you have been heretofore advised in the statement of the issues, it is the claim of the proponents, Louis Voss and Margaret Voss, that the paper which has been identified as Proponents' Exhibit 'A' is the last will of Henry Iwers, deceased, and that it was actually signed by him as his will and by D. H. Snoke and Mary C. Geerts as witnesses thereto.

"On the other hand, the contestants claim that the paper identified as Proponents' Exhibit 'A' is not the will of the said Henry Iwers, deceased, and that the name Henry Iwers appearing on said Exhibit 'A' was not placed thereon by the said Henry Iwers, and is not the genuine signature of the said Henry Iwers, and that the name of D. H. Snoke appearing upon said

Exhibit 'A' was not placed thereon by the said D. H. Snoke and is not the genuine signature of the said D. H. Snoke.

"You are further instructed that a statute of this state provides that a will, to be valid, must be in writing, signed by the testator, or by someone in his presence and by his express direction writing his name thereon, and witnessed by two competent persons. If, therefore, the paper identified as Proponents' Exhibit 'A' was not in fact signed by Henry Iwers, if that be the fact, and was not also signed by the said D. H. Snoke, if that be the fact, then said paper would not be the valid will of the said Henry Iwers, deceased.

"In this connection you are further instructed that the burden of proof is upon the proponents, Louis Voss and Margaret Voss, who are seeking to have the paper identified as Exhibit 'A' established as the last will of the said Henry Iwers, deceased, and admitted to probate, to prove by a preponderance of the evidence given you upon the whole case each of the following affirmative propositions, to-wit:

"a. That the paper identified as Exhibit 'A' was signed by the said Henry Iwers, deceased, and that said paper bears the genuine signature of Henry Iwers.

"b. That the paper identified as Exhibit 'A' was signed by D. H. Snoke and that said paper bears the genuine signature of D. H. Snoke.

"If you do not so find affirmatively in favor of the proponents, Louis Voss and Margaret Voss, upon each and all of the foregoing propositions a. and b., or if you find that the proponents, Louis Voss and Margaret Voss, have failed to establish by a preponderance of the evidence, as that term is defined in these instructions, that the paper identified as Exhibit 'A' bears the genuine signature of the said Henry Iwers and that said paper Exhibit 'A' was actually signed by him, or if you find that the proponents, Louis Voss and Margaret Voss, have failed to establish by a preponderance of the evidence that said paper Exhibit 'A' bears the genuine signature of D. H. Snoke and that said paper was actually signed by him, then, in any of such events, you should proceed no further, but at once return a verdict for the contestants in this cause.

"On the other hand if you so find affirmatively in favor of the proponents, Louis Voss and Margaret Voss, upon each and all of the foregoing propositions a. and b., or if you find that

the proponents, Louis Voss and Margaret Voss have established by a preponderance of the evidence, as that term is defined in these instructions, that the paper identified as Exhibit 'A' bears the genuine signature of the said Henry Iwers, and that the said paper Exhibit 'A' was actually signed by him, and if you further find that the proponents, Louis Voss and Margaret Voss, have established by a preponderance of the evidence that said paper Exhibit 'A' bears the genuine signature of D. H. Snoke and that said paper was actually signed by him, then, in such event, you should return a verdict for the proponents in this cause.''

As above stated, instruction No. 3, excepting the last paragraph, was given at the request of contestants. The instruction was modified by the court by adding the last paragraph. The contestants predicate error on the giving of the last paragraph because they allege it withdrew the issue of the due execution of the will, that is, the instruction presented to the jury only the issue of the genuineness of the signatures of Iwers and Snoke and the court failed to submit the issue of the formal execution of the will.

It will be observed that in this instruction the contestants, in stating their claim, do not mention Miss Geerts nor question her signature. In stating the affirmative propositions that must be established by proponents, there is no statement that proponents must prove that she signed the will as a witness to the signature of the testator. After stating the requirements of a valid will, the instruction tells the jury that in this connection (the validity of the will) the proponents must prove that the signatures of Iwers and Snoke were genuine. Such was the only burden placed on proponents by the requested instruction. The instruction, in substance, tells the jury that if the signatures were genuine the will was valid. The requested instruction, as to contestants, became the law of the case. Grosjean v. R. Co., 146 Iowa 17, 123 N. W. 162.

In all of the requested instructions that pertain to the execution of the will, the sole question considered is whether the signatures were genuine. For example, in instruction No. 5, we find the following language: ''It is the contention of the contestants that the name of Henry Iwers, appearing upon the paper identified as proponents' Exhibit 'A', is not the genuine signature of

said Henry Iwers but that the same is a tracing of said name, etc." Said instruction also states: "It is further contended by contestants in this case that the name D. H. Snoke, appearing on said Exhibit 'A', is not the genuine signature of said D. H. Snoke."

We are of the opinion that contestants placed their own construction on their ground of contest that the will was not signed and witnessed as required by law, which was that the will was invalid because the will was not signed by Iwers or the witness Snoke and their signatures were forgeries, and that if they did sign the will, it was a valid will and signed and witnessed as testified to by Miss Geerts.

While the last paragraph of instruction No. 3, added by the court, does state that if the jury found that the signatures were genuine it should return a verdict for the proponents, in view of the requested part of the instruction, which is the law of the case, the modification of the instruction by the court was in harmony with the requested instruction and correct. It may be conceded that if the entire instruction had been given on the court's own motion, that it would have constituted reversible error. But in giving the instruction, the trial court acceded to defendant's theory of their ground of contest and no objections were made to the instructions by the proponents.

■ A litigant will not be permitted to entrap the court by an invitation to commit error. In the case of Remington v. Machamer, 192 Iowa 1098, we stated on page 1102, 186 N. W. 32, on page 34:

"As to all the rest of Instruction No. 8, defendant, because of the offered instruction, in the same language as that given by the court, may not now complain. Grosjean v. Chicago, M. & St. P. R. Co., 146 Iowa 17, 23, 123 N. W. 162. Having invited the error, if any there was, defendant may not now take advantage of it."

III. Miss Geerts, after testifying on direct examination to the formal execution of the will, further testified to a conversation between testator and his attorney, Mr. Snoke, which occurred at his office just prior to drawing the will as follows:

"Mr. Iwers stated to Mr. Snoke that he wished to make the Vosses beneficiaries. The talk before any writing was done

took 10 or 15 minutes. Mr. Snoke asked Mr. Iwers what the first names were of the Vosses, and Mr. Iwers gave him the names 'Louis and Margaret'. After he got this information, he made notations on a slip of paper.''

At the close of contestants' evidence, as a part of proponents' case in chief, Miss Geerts was re-called for further direct examination. She identified Exhibit ''AT'' which was a small sheet of paper containing the words ''Louis Voss, Margaret Voss, * * * without bonds''. She stated that on her prior direct examination, she had testified that Mr. Snoke had made notations on a slip of paper; that Exhibit ''AT'' was the paper she referred to and that she saw the attorney write the words appearing thereon at his office on the day the will was executed and that at the time the notation was made, Iwers and Snoke were talking about what would go into the will. She further testified she found the exhibit in Mr. Snoke's office in the files of the John Iwers' Estate and that she left the exhibit in the files and did not know the circumstances of its production at the trial.

Contestants objected to the admission of Exhibit ''AT'' into the evidence on the ground that it was hearsay, a private memorandum of the witness who had identified it and contestants did not have the privilege of cross-examining the alleged maker of the exhibit because he was deceased at the time of the trial and that the exhibit was not material to any issue in the case. The objection was overruled.

Miss Geerts took no part in the conversation, and it was proper for her to relate the conversation between Iwers and Snoke and the circumstances surrounding the execution of the will. However, Exhibit ''AT'' does not constitute independent, substantive evidence of the conversation between Iwers and Snoke or the making of the memorandum. What ever probative value it has depends on the credibility of the witness. It is not, as contended by proponents, competent evidence under Code section 11280, which provides that entries and other writings of a person deceased, who was in a position to know the facts therein stated, are presumptive evidence of such facts when the entry was made in the ordinary course of professional conduct, because the exhibit does not contain a statement of fact. No date appears on the exhibit and its meaning is obscure for the reason that the names appearing thereon before the words ''without

bonds'' are as referable to the executors desired by the testator as they are to the persons whom he desired 'to take under his will. The most that can be claimed for the exhibit is that it tended to strengthen the testimony of Miss Geerts about the conversation and memorandum. This testimony of Miss Geerts was not necessary to the making of a prima facie case by proponents by proving that the will was executed in compliance with the requirements of Code section 11852. Exhibit ''AT'' had no bearing on the question of the formal execution of the will or on the issue raised by the objections of the contestants to the probate of the will.

While the offer of Exhibit ''AT'' should have been denied, the uncontradicted testimony of Miss Geerts in regard to the conversation and memoranda made by Mr. Snoke was in the record without objection. The said testimony of Miss Geerts and the exhibit were manifestly immaterial to any issue in the case and the overruling of the objections to the admission of the Exhibit ''AT'' in evidence does not, under the circumstances, constitute reversible error.

Contestants requested the court to instruct the jury that Exhibit ''AT'' was withdrawn from its consideration and that it should disregard it in its consideration of the case. The trial court refused to give the requested instruction and in lieu thereof gave instruction No. 8, which reads as follows:

''INSTRUCTION No. 8.

''You are further instructed that during the progress of this cause the proponents offered in evidence a piece of paper, identified as Exhibit 'AT', and the same was admitted in evidence.

''You are instructed that though this testimony is competent, yet, as the right of cross examination does not exist, it is not highly favored by the law, and you are at liberty to give it such weight and value as under the circumstances you think it is justly entitled to.''

Instruction No. 8 was the only instruction given on the court's own motion. Appellants contend that the giving of instruction No. 8 constituted reversible error because Exhibit ''AT'' was not competent to prove any material issue in the case, and that, assuming it was competent evidence, the instruction calls special attention to certain evidence or a class of evi-

dence and thereby tends to magnify the importance of such evidence in the minds of the jury.

It is well established that the trial court should refrain from giving undue prominence and emphasis to the testimony of certain witnesses or to particular facts or the theory of one side or the other, as such practice may mislead the jury. Middleton v. City of Cedar Falls, 173 Iowa 619, 153 N. W. 1040; Simons v. Fort Dodge R. Co., 128 Iowa 139, 103 N. W. 129.

The instruction clearly does not magnify the importance of Exhibit ''AT'' but minimizes its evidentiary value. If Exhibit ''AT'' were admissible under Code section 11280 as an entry made in the ordinary course of professional conduct, the instruction would be a correct statement of the rule in regard to such evidence. See State v. Wooderd, 20 Iowa page 541.

Instruction No. 8 is only vulnerable to attack on the ground that the court instructed the jury in regard to an exhibit that was not material to any issue in the case and the instruction requested by contestants should have been given.

As above stated, the only issue raised by the objections to the probate of the will was the genuineness of the signatures. That was the issue tried and submitted to the jury. The verdict of the jury was, ''we, the jury, find for the proponents, and that Exhibit 'A' is the valid will of Henry Iwers and should be admitted to probate.''

We think it is manifest that the jury was not misled or influenced by this instruction about an exhibit that obviously was not material to proponents' prima facie case, or to the issue made by the objections.

Being convinced that no prejudice resulted to contestants, Exhibit ''AT'' cannot be made a ground for reversal of the case.

IV. Another assignment of error is, ''The court erred in overruling contestants' repeated objections to the use of improper memoranda by proponents' witness Francis B. Courtney when giving his testimony, and in permitting said witness over objection to refer to and testify from said memoranda. The action of the trial court in striking Courtney's testimony and then orally admonishing the jury to disregard the same did not cure the error.''

Mr. Courtney was one of the three hand-writing experts that testified for proponents. He first testified that, from a comparison of the disputed signature on the will with standard

signatures of Iwers and Snoke which had been admitted in evidence, the signatures on the will were genuine. This opinion of the witness was clearly admissible and no objection was made to the testimony by contestants. He then proceeded to state the reasons for his opinion. Early in the examination of the witness it appeared that he was making use of memoranda in his possession in giving the facts and reasons on which his opinion that the signatures were genuine was based. The memoranda contained notations and observations about the letters contained in the name of Iwers as they appeared in enlarged photographs of his genuine signature. Many of the photographs were miniatures or reduced photographs of the genuine signatures and were inaccurate representations. The witness admitted he was unable to give his testimony concerning the reasons on which he based his opinion without consulting the memoranda and that it was prepared solely for use at the trial.

Counsel for contestants at once objected to the testimony of the witness on the ground that he was testifying from the memoranda; that no foundation had been laid for its use and that it was prepared for the sole purpose of giving testimony at the trial; that it appeared that the witness could not testify independently of the memoranda; that many photographic signatures on the memoranda were not in evidence nor were they duplicates of photographs in evidence; that many of the photographs were miniatures or reduced photographs of the original signatures, and that the photographs of genuine signatures were not the best evidence. The objections were overruled. Counsel for contestants persisted in his objections to the method of testifying (from the memoranda) during the examination of the witness.

It also appeared that the witness had examined about 200 signatures of Snoke which were not in evidence and that he based his opinion that the Snoke signature on the will was genuine in part on such examination. At the conclusion of the examination of the witness on Thursday, November 5, counsel for contestants moved to strike all of the testimony of the witness relating to the Snoke signature because his opinion was based on an examination of instruments and signatures not in evidence which motion was sustained. Counsel then renewed his objections and moved to strike the testimony of the witness as to the signature of Henry Iwers *for all the reasons contained in*

*his prior objections to the use of the memoranda.* The court reserved his ruling on this motion and the next day, Friday, November 6, court adjourned until the following Monday.

When court convened on Monday, and just before the close of the evidence, the court, in the presence of the jury, changed his ruling and sustained the motion to strike the testimony of the witness Francis B. Courtney as to the signature of Henry Iwers, and then orally admonished the jury not to take into consideration any of the evidence of the witness in relation to the signature of Henry Iwers in arriving at their verdict.

We think the trial court was right in ultimately concluding that the objections to the evidence given by Mr. Courtney based on the memoranda should have been sustained. It will be observed that the court struck out not only the inadmissible testimony of the witness but also his opinion that the signature of Iwers was genuine, although the motion to strike the testimony of the witness as to the signature of Iwers was based solely on the reasons urged in the prior objections to the use of the memoranda. The ruling was obviously too favorable to the contestants, but was unchallenged by proponents. There is no complaint made on this appeal to the admission in evidence of the opinion of this expert witness that the signature was genuine. The only proposition submitted by contestants on this assignment of error is that the court erred in overruling the objections to the testimony of the witness based on the memoranda and that the error was not cured by striking it and instructing the jury to disregard it.

The position of contestants is that the action of the court in changing his ruling on the objections to the testimony of Mr. Courtney and in sustaining the motion to strike after the inadmissible evidence had been before the jury five days and just before the arguments were made to the jury and instructing the jury to disregard such testimony did not cure the error in overruling objections to the method adopted by the witness of testifying from the memoranda.

The evidence that contestants claim was erroneously admitted is the testimony of Mr. Courtney giving the reasons and facts on which he based his opinion that the signatures were genuine, which testimony was from the memoranda and not from personal recollection.

The general rule is that, if evidence erroneously admitted

during the progress of a trial is distinctly withdrawn by the court, the error is cured, except in extreme instances where it is manifest that the prejudicial effect of the evidence on the jury remained despite its exclusion and influenced their verdict. 4 C. J. 898, section 2972; McKee v. Iowa R. & L. Co., 204 Iowa 44, 214 N. W. 564.

In the case of McKee v. Iowa R. & L. Co., supra, we stated on page 48, 214 N. W., on page 567:

"It is the general rule that error in the admission of evidence is cured by subsequently striking it out. Croft v. Chicago, R. I. & P. R. Co., 134 Iowa 411, 109 N. W. 723. A fortiori the admission of incompetent evidence is cured by specific instruction to the jury not to consider same, in addition to striking such evidence from the record. There are exceptions to this rule, and consequently the rule may not be invariably applied."

The testimony complained of was merely the basis or reason for the opinion of Mr. Courtney.

Because of the nature of the evidence, we do not think incurable prejudice resulted and are of the opinion that this case is controlled by the general rule and not by its exceptions and that the error in overruling the objections to the testimony complained of was cured by striking it out and the instruction of the trial court to the jury to disregard it.

Finding no error in the case, it is affirmed.—Affirmed.

MITCHELL, SAGER, HAMILTON, KINTZINGER, MILLER, and ANDERSON, JJ., concur.

RICHARDS, J., dissents.